NATIONAL TEA COMPANY, Plaintiff-Appellee, *v.* AMERICAN NATIONAL BANK AND TRUST COMPANY OF CHICAGO, Trustee, *et al.*, Defendants-Appellants.

First District (1st Division) No. 80-2837

Opinion filed October 5, 1981.—Rehearing denied November 9, 1981.

---

Byron L. Gregory and Bruce H. Weitzman, both of Chicago (McDermott, Will & Emery, of counsel), for appellants.

Eugene E. Gozdecki, of Chicago (Mayer, Brown & Platt, Bennett I. Berman, and Murray J. Lewison, of counsel), for appellee.

Mr. JUSTICE GOLDBERG delivered the opinion of the court:

The trial court granted National Tea Company (plaintiff) a summary judgment upholding its right of possession to leased premises. American National Bank and Trust Company of Chicago and Jerome R. Rosenberg (defendants) appeal.

On July 15, 1964, Nicholas P. Cholis leased 611 Dundee Road in Elgin, Illinois, to plaintiff. The term was from October 1, 1965, through September 30, 1980. The lease provided for an annual rent of $29,000 in monthly installments of $2416.67. The lease contained an automatic extension clause, after completion of the original term, for four periods of five years each, at the same terms and conditions as the original lease period. The plaintiff as lessee, however, had the privilege of cancelling the lease "at the end of the original term or at the end of any extended period upon Lessee's giving to Lessor at least 180 days notice of such cancellation prior thereto * * *." The lease further provided the plaintiff as lessee could sublet or assign all or any part of the premises but would remain liable for any payments not tendered by the sublessee or assignee.

On April 11, 1974, plaintiff sublet the entire premises to Value Rug Mart Inc. and Piper's Carpeting Inc. These companies are owned and controlled by defendant Jerome R. Rosenberg. The sublease provided for a monthly rent of $2250 and for a stipulated percentage rental. The sublease commenced on May 1, 1974, and ran through September 29, 1980. Subsequently, defendant American National Bank and Trust Company of Chicago, as trustee, became the owner of record of the leased property and lessor in the original lease. Also, defendant Rosenberg became owner of the entire beneficial interest in the trust, including power of direction.

This sublease also provided:

"3. The Prime Lease grants to Sublessor upon certain conditions four (4) extensions or options of renewals for periods of five (5) years each after the expiration of the original term on September 30, 1980. The Tenant is not granted the privilege and is hereby denied the privilege or option of renewing or extending this Sublease under and as provided in the Prime Lease."

On December 1, 1977, plaintiff and Value Rug and Piper's Carpeting (former sublessees) terminated their previous sublease and entered into an agreement referred to as an "assignment." Plaintiff assigned to Value Rug and Piper's Carpeting "all of Assignor's [plaintiff's] leasehold estate and right, title and interest for all of the remainder of the current term ending September 30, 1980 * * *." The "assignment" further provided:

"The automatic extension periods granted in the Assigned Lease are expressly excluded from this assignment. Assignor [plaintiff] reserves the right of re-entry in the event of a default by Assignee."

Under this "assignment," assignees Value Rug and Piper's Carpeting agreed to pay the entire monthly rent of $2416.67 plus a stipulated percentage rental.

Subsequently, assignees (Value Rug and Piper's Carpeting) notified defendant trustee, which at this time was the lessor in fact, that they wished to terminate the assigned lease at the end of the original lease term, September 30, 1980. The notification complied with the 180-day period of the end of the lease term as prescribed by the original lease. Defendant trustee then leased the premises to a third party. On May 21, 1980, plaintiff brought this action seeking a declaratory judgment establishing its rights to possession of the leased property as of October 1, 1980, at expiration of the original lease term. Both plaintiff and defendants filed motions for summary judgment.

Plaintiff argues the "assignment" contract only incorporates the original term of the prime lease. Furthermore, because the "automatic extension periods * * * are expressly excluded from [the] assignment" plaintiff thereby reserved the right either to continue to lease the property after September 30, or to terminate the lease upon proper notice. Under plaintiff's theory, the rights of Value Rug and Piper's Carpeting, assignees, to possession of the leased property ended on September 30, and they had no legal authority to terminate the prime lease.

Defendants urge the lease "assignment" and related documents did not clearly and unambiguously reserve to the plaintiff the right to regain possession as of October 1, 1980; the lease "assignment" did not state the right to send the termination notice was reserved to plaintiff so that such right passed to the assignees; since plaintiff drafted the "assignment" any ambiguity must be construed against plaintiff; and plaintiff's assertion as

to the intent of the parties has been refuted by the language of the "assignment" and by an affidavit filed in the trial court by Jerome R. Rosenberg.

Whether or not a contract is ambiguous is a question of law. (*Touhy v. Twentieth Century-Fox Film Corp.* (1979), 69 Ill. App. 3d 508, 513, 387 N.E.2d 862, citing *Stevenson v. ITT Harper, Inc.* (1977), 51 Ill. App. 3d 568, 573, 366 N.E.2d 561, *appeal denied* (1977), 66 Ill. 2d 642.) A contract will be considered to be ambiguous if it is " 'one capable of being understood in more senses than one.' " *Standard Steel & Wire Corp. v. Chicago Capital Corp.* (1975), 26 Ill. App. 3d 915, 919, 326 N.E.2d 33, quoting from *First National Bank v. Victor Comptometer Corp.* (1970), 123 Ill. App. 2d 335, 341, 260 N.E.2d 99.

In our opinion the sublease of April 11, 1974, and also the "assignment" of December 1, 1977, clearly and unambiguously reserved to plaintiff the right to reoccupy the premises on October 1, 1980, and the right either to accept the automatic extensions of the original lease of July 15, 1964, or to terminate it. The clear provisions of the sublease and of the "assignment" make this conclusion inescapable.

The sublease of April 11, 1974, expressly noted the four renewal periods in the original lease and denied to Value Rug and Piper's Carpeting as sublessees "the privilege or option of renewing or extending this Sublease under and as provided in the Prime Lease." The sublease expressly terminated on September 29, 1980.

■■ The "assignment" of December 1, 1977, expressly assigns only the "leasehold estate * * * for all the remainder of the current term ending September 30, 1980 * * *." This provision clearly indicates plaintiff reserved rights under the lease which extended beyond the original term. The "assignment" also provides: "The automatic extension periods are expressly excluded * * *." Taking the "assignment" as a whole (see *Dasenbrock v. Interstate Restaurant Corp.* (1972), 7 Ill. App. 3d 295, 299, 287 N.E.2d 151), we find that there is only one sense in which the contract can be understood. The contract is clear and unambiguous and reserved to plaintiff all rights of the automatic extension under the prime lease.

Because we have determined the so-called "assignment" contract of December 1, 1977, is unambiguous, we must look only to the language of the contract to ascertain the intent of the parties. (*Touhy v. Twentieth Century-Fox Film Corp.* (1979), 69 Ill. App. 3d 508, 512-13.) We need not and should not look to extrinsic evidence to determine their intent. (*Terracom Development Group, Inc. v. Coleman Cable & Wire Co.* (1977), 50 Ill. App. 3d 739, 745, 365 N.E.2d 1028.) Furthermore, we cannot add covenants to a contract simply to reach a more equitable agreement. (*Touhy v. Twentieth Century-Fox Film Corp.* (1979), 69 Ill. App. 3d 508, 513.) Therefore, we find any reference to the change in rent between the

sublease and the so-called "assignment," as well as various expressions of the parties concerning their intent, are legally irrelevant.

■■ In their motion to reconsider the order granting summary judgment to plaintiff, defendants urge counsel for plaintiff, during oral argument before the trial court on September 22, 1980, remarked that the "assignment" was entered into for defendants' advantage because of tax reasons. Defendants contend this statement by counsel constituted extrinsic evidence going to the intent of the parties. Defendants supported their position by an affidavit by defendant Rosenberg filed with the motion for reconsideration. Since we have concluded the sublease and "assignment" are not ambiguous as a matter of law, the statement of plaintiff's counsel is an extrinsic matter which this court will not consider. We also note the trial court made clear it was not considering extrinsic evidence in reaching its decision.

Defendants also urge the language in the "assignment" expressly excluding the automatic extension provisions actually refers only to an attempt by plaintiff as assignor to prevent the assignees from having the power of keeping the lease in existence after expiration of the original term. Also, defendants filed a motion for summary judgment in which they contended there was no genuine issue as to any material fact. Defendants' brief prays for reversal and for remand for entry of a judgment in their favor. Thus both sides in this controversy, by moving for summary judgment, have solemnly assured the trial court and this court that there is no issue of material fact presented by this record. See *Catalano v. Pechous* (1980), 83 Ill. 2d 146, 154-55, 419 N.E.2d 350.

Defendants cite and depend upon *Bevelheimer v. Gierach* (1975), 33 Ill. App. 3d 988, 992, 339 N.E.2d 299. There, a lessee assigned the lease to a corporation which he had organized. This court held in substance "that a lessee for a term for years who assigns his lease parts with all his rights thereunder." (33 Ill. App. 3d 988, 992.) However, it does not appear in *Bevelheimer* that the lessee as assignor had specifically excepted any right of any kind from the assignment. Therefore, we agree with plaintiff that *Bevelheimer* is not relevant here.

Similarly in the later cases of *Danaj v. Anest* (1979), 77 Ill. App. 3d 533, 396 N.E.2d 95, and *Dayenian v. American National Bank & Trust Co.* (1980), 91 Ill. App. 3d 622, 414 N.E.2d 1199, the question before the court was whether the transaction was an assignment or a sublease because an assignment passed all interest to the assignee. However, in the case at bar, regardless of the legal classification of the document involved, it is manifest that plaintiff expressly retained a reversionary interest in the lease. That interest had been specifically excepted from the original sublease and from the purported assignment. Thus the issue in the three cited cases is the legal nature of the document of transfer.

In the instant case the transfer may or may not have been legally classified as an "assignment" but it did operate, because of the specifically stated exception, to retain a reversionary right in the plaintiff as original lessee. This was true in the case of the sublease, and it remains equally true in the case of the second document referred to as an "assignment." The parties may refer to the document of December 1, 1977, as an "assignment" or by any other name. The issue remains as to whether this document had specifically reserved certain rights to plaintiff.

We find no issue of material fact in the record before us. We conclude plaintiff is entitled to judgment as a matter of law. The judgment appealed from is accordingly affirmed.

Judgment affirmed.

CAMPBELL, P. J., and O'CONNOR, J., concur.