**The BOATMEN'S NATIONAL BANK OF ST. LOUIS, Plaintiff–Appellant,**

v.

**Robert F. SMITH and M–T Acquisition Corporation, Defendants–Appellees.**

No. 87–1259.

United States Court of Appeals, Seventh Circuit.

Argued June 1, 1987.

Decided Dec. 15, 1987.

John K. Eggers, Rubberry, Phares, Abramson & Fox, Chicago, Ill., for plaintiff-appellant.

Richard W. Rappold, Teitelbaum, Wolfberg, Guild & Toback, Chicago, Ill., for defendants-appellees.

Before CUMMINGS and CUDAHY, Circuit Judges, and GRANT, Senior District Judge.*

GRANT, Senior District Judge.

In this diversity action, The Boatmen's National Bank of St. Louis [Boatmen's] sought a turnover order for $185,000 held to fund a cashier's check issued payable to the Internal Revenue Service and naming Robert F. Smith [Smith] as the remitter.

---

* Honorable Robert A. Grant, Senior District Judge for the Northern District of Indiana, is sitting by designation.

Boatmen's now appeals the denial of that motion by the district court. We affirm.

## I

The following facts forming the background to this action are not in dispute. Jefferson State Bank [Jefferson] and Exchange National Bank of Chicago agreed to lend $5,150,000 to two Illinois corporations, ARF Landfill Corp. and Lakeland Properties, Inc. The guarantors on the loan were Sea Sprite Industries, Inc., the owner of the ARF and Lakeland stock, and appellee Robert F. Smith, the owner of Sea Sprite stock. Schedule I, attached to and made a part of the Loan and Security Agreement pursuant to section 2.17 of the Agreement, designated that $234,569.64 of the loan was allocated "to be held by Jefferson State Bank for payment of Robert F. Smith Income Taxes."

After negotiating the Loan and Security Agreement on September 19, the parties closed the loan on September 22, 1986. The next day the escrowee Chicago Title and Trust Company transferred $232,-264.64[1] by check payable to Jefferson State Bank; on the check was written "Payment to be held for payment of Robert F. Smith income tax." With those funds Jefferson opened a money market account in Smith's name. Two withdrawals were made from that account: a certified check issued on December 16, 1986, in the amount of $49,120.16 payable to the Illinois Department of Revenue, and a cashier's check issued on December 17, 1986, for $185,000 payable to the Internal Revenue Service and naming Robert F. Smith as the remitter.

On the same day, December 17, 1986, appellant Boatmen's obtained a default judgment in the amount of $1,563,488.80 against appellees Smith and M–T Acquisition Corporation. After serving a Citation to Discover Assets on Jefferson, it learned of the $185,000 check still in Jefferson's possession. Therefore, on January 19, 1987, as judgment creditor, Boatmen's filed a motion for turnover order to obtain Smith's assets held by Jefferson, among which was the $185,000 held to fund the check to the IRS.

Jefferson objected to the turnover of the $185,000 by claiming an interest in those funds superior to that of Smith and of Boatmen's. In its Response to the Motion for Turnover Order, Jefferson identified the source of the funds to be the above-described loan, which had been negotiated in full knowledge of Smith's income tax liabilities. In fact, Jefferson asserted, it would not have funded the loan to the extent it did if provision had not been made for covering Smith's tax debt. Those funds allocated to tax payments were never available to Smith to pay any liabilities except tax debts, insisted Jefferson, and thus could not be available to Boatmen's.

## II

Finding that the funds at issue were effectively restricted to the sole use of payment of Smith's tax liabilities, the district court denied Boatmen's motion for turnover order. The court pointed out that a check for $232,264.64 was disbursed from the escrowee to Jefferson, not to Smith, and that the specific use of those funds was clearly designated both on the face of that check and in the loan agreement. It further noted that an internal bank stop order prevented withdrawals without prior bank authorization, and that the funds were actually used to pay only the Illinois Department of Revenue and the Internal Revenue Service. It concluded thus:

It is clear from the circumstances that Smith could not use the funds to pay any debts other than income taxes. The bank would be in breach of its fiduciary and contract obligations if it permitted disbursement for any other purpose, whether to pay a creditor of Smith or to apply it toward any outstanding loan. The funds were effectively restricted and are not available to satisfy the judgment.

**1.** The discrepancy between the $234,569.64 allocated in Schedule I for payment of Smith's taxes and the $232,264.64 check from the escrowee to Jefferson State Bank was not explained to the court.

Boatmen's has appealed that decision, claiming that neither the loan agreement nor the money market account documents legally restricted the use of that portion of the loan. Appellant also asserts that neither the intent of the parties nor the circumstances of the transactions gave rise to fiduciary or contractual obligations binding on Jefferson.

### III

Jurisdiction of these proceedings rests on diversity of citizenship (28 U.S.C. § 1332); thus state law governs the determinations herein. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941); *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The parties have turned to the laws of the state of Illinois to argue their respective rights to the funds in question. The federal district court found that the loan agreement, to which Jefferson and Smith were parties, and the surrounding circumstances clearly reflected the intent of the parties to restrict the use of the funds. We thus begin with that contractual agreement and apply Illinois principles of contract construction.

The standard of appellate review of Illinois contract law has been succinctly defined in *LaSalle National Bank v. Service Merchandise Co.*, 827 F.2d 74 (7th Cir. 1987):

Recently, in *Airline Stewards & Stewardesses Ass'n, Local 550 v. American Airlines, Inc.*, 763 F.2d 875 (7th Cir. 1985), *cert. denied*, [474 U.S. 1059] 106 S.Ct. 802 [88 L.Ed.2d 778] (1986), this court had occasion to set forth the basic principles of Illinois law regarding the construction of contracts. There, the court noted that "[t]he primary object in construing a contract is to give effect to the intention of the parties." *Id.* at 877 (citing *Schek v. Chicago Transit Auth.*, [42 Ill.2d 362] 247 N.E.2d 886, 888 (Ill. 1969)). The starting point must be the contract itself. If the language of the contract unambiguously provides an answer to the question at hand, the inquiry is over. *Id.* [247 N.E.2d 886] at 878.

The question of whether a contract is ambiguous is a conclusion of law and may be reviewed *de novo* by the court on appeal. *Id.* (citing *National Tea Co. v. American Nat'l Bank & Trust Co.*, [100 Ill.App.3d 1046, 56 Ill.Dec. 474, 476] 427 N.E.2d 806, 808 (Ill.App.Ct.1981)). If the trial court determines that the contract is unambiguous, it must then go on to declare its meaning. Such a declaration is also a conclusion of law and may be reviewed *de novo*. *Id.* On the other hand, if the court holds that the contract is ambiguous, its meaning becomes a question of fact and must be submitted to the trier of fact. *Id.* (citing *Hagerty, Lockenvitz, Ginzkey & Assocs. v. Ginzkey*, [85 Ill.App.3d 640, 40 Ill.Dec. 778, 779] 406 N.E.2d 1145, 1146 (Ill.App.Ct. 1980)). Under these circumstances, the trier of fact considers not only the language of the contract but also any extrinsic or parol evidence presented by the parties. Its determination is a finding of fact and this court must review that finding of fact under the clearly erroneous standard. *See Anderson v. City of Bessemer City*, 470 U.S. 564, 573–74 [105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518] (1985).

*Id.* at 78.

### IV

Applying these principles to the language of the Loan and Security Agreement herein, we find that the contract unambiguously states that a specified portion of the loan funds were to be used for Smith's tax debts. Section 2.17 of the Agreement expressly integrates Schedule I: "The Company [ARF Landfill Corporation and Lakeland Properties, Inc.] may use the funds herein to be loaned in accordance with Schedule I attached hereto and made a part hereof." Under Schedule I, entitled "Loan Disbursement Statement," the entire loan of $5,150,000 from Jefferson and another bank was allocated to specific uses. The last designation under "funds disbursed" was the amount of $234,569.64 "to be held by Jefferson State Bank for payment of Robert F. Smith Income Taxes."

The contractual terms were explicitly stated and precisely carried out. The

check transferring $232,264.64 from the escrowee was made payable to Jefferson, not Smith; on its face was written "Payment to be held for payment of Robert F. Smith income tax." A separate account was established for those funds, and the only two checks drawn on that account were payable to the state and federal revenue services.

Boatmen's insists, however, that Jefferson is under no contractual obligation to restrict the funds to payment of Smith's taxes, for section 2.17 states that the company "may," not "shall," use the funds in accordance with Schedule I.

■ We do not find this argument persuasive. In construing the language of a contract, a court must consider the contract in the context of the entire agreement. *Martindell v. Lake Shore National Bank,* 15 Ill.2d 272, 283, 154 N.E.2d 683, 689 (1958). The primary object of the court is to give effect to the intention of the parties. *Schek v. Chicago Transit Authority,* 42 Ill.2d 362, 364, 247 N.E.2d 886, 888 (1969). The mutual intent of the parties at the time the contract was made [*See White v. Roughton,* 689 F.2d 118, 120 (7th Cir. 1982), *cert. denied,* 460 U.S. 1070, 103 S.Ct. 1524, 75 L.Ed.2d 947 (1983)] can best be determined by considering the contract as a whole, reviewing each part in light of the others. *Air Line Stewards and Stewardesses Assoc. v. Trans World Airlines,* 713 F.2d 319, 321 (7th Cir.1983). Where the document contains both general and specific provisions relating to the same subject, the specific provision controls. *Steffen v. Paulus,* 125 Ill.App.3d 356, 80 Ill.Dec. 675, 678, 465 N.E.2d 1021, 1024 (1984); *Continental Cas. Co. v. Polk Bros., Inc.,* 120 Ill.App.3d 395, 75 Ill.Dec. 712, 715, 457 N.E.2d 1271, 1274 (1983).

The contract before us specifically sets aside a precise portion of the loan to be held by Jefferson for the payment of Smith's tax liabilities. The Agreement explicitly incorporates Schedule I by reference. *See Golen v. Chamberlain Mfg. Co.,* 139 Ill.App.3d 53, 93 Ill.Dec. 677, 682, 487 N.E.2d 121, 126 (1985). And Schedule I itemizes the funds to be used for tax payments. We find that the exact designation of Schedule I is the more specific provision

concerning the use of the funds being loaned, and thus is controlling. We are satisfied that the parties to the contract intended $234,569.64 to be used exclusively for tax payments, and that Jefferson held and disbursed the funds in accord with the agreement. Accordingly, we hold that the contract is unambiguous as a matter of law.

There is, nevertheless, an issue remaining, and it is a question of fact concerning the method by which Jefferson performed its duties under the contract: Was the money market account established by Jefferson for those funds effectively restricted? Boatmen's asserts that, because the account documents were not restrictive, Smith could have reached the funds in that account; and, if Smith could have done so, then Boatmen's as judgment creditor had the right to attach those funds.

It is true that the account documents do not state restrictions on the use of the funds. However, Jefferson points out the following facts: (1) the check from the escrowee was made payable to Jefferson; (2) the check itself directed the restricted use of the amount transferred; (3) Jefferson established a separate account and used the funds exactly as directed; and (4) an internal bank stop order on the account prevented withdrawals without prior authorization by the bank president or vice-president in charge of loans. Jefferson also explains that all parties to the loan knew of Smith's tax debts and intended that they be paid so that the value of the collateral held by Jefferson as security would not be jeopardized. If such provision had not been included in the loan agreement, Jefferson would not have funded the loan to the extent it did.

■ The district court properly admitted that parol evidence in considering the relationship between the parties and the intent of the parties in creating their contractual agreement. Parol evidence establishing the original intent between the contracting parties may be admitted. *Real Estate Data, Inc. v. Sidwell Co.,* 809 F.2d 366, 376 (7th Cir.1987); *Fox v. Inter-State Assurance Co.,* 84 Ill.App.3d 512, 515, 39 Ill.Dec. 894, 897, 405 N.E.2d 873, 876 (1980). Such evidence can include restrictive comments

on checks. Notations placed on a check at the time of its execution, directing the use of the funds, are an integral part of the agreement and must be construed with the body of the instrument to arrive at the true agreement existing between the parties. *Matter of Avildsen Tools & Machine, Inc.,* 794 F.2d 1248, 1252 (7th Cir.1986); *In re Feldman's Estate,* 387 Ill. 568, 56 N.E.2d 405, 408 (1944).

In this case, the written terms of the check from the escrowee expressly designated the purpose for which the payment was made. Jefferson accepted the check, established a separate account for that purpose, and used the funds in accordance with the stipulations. Payment to the IRS was made by the bank in the form of a cashier's check, naming Smith as the remitter.[2] In these steps the parties performed their obligations under the contract and fulfilled the intentions expressed therein. Jefferson was bound by the terms of the agreement and performed its part under the contract as the parties intended: The district court so found, and we concur.

We conclude that the language of the loan agreement to which Jefferson and Smith were parties was not ambiguous; it clearly designated the specific use of $234,-569.64 of the loan for Smith's tax debts. We also find that, in performing its duties under the contract, Jefferson effectively restricted the use of the money market account into which the tax payment funds were disbursed. The district court properly admitted extrinsic or parol evidence to establish the original intentions of the parties and to integrate the written notations on the checks and the internal stop order of the bank with those intentions evidenced in the contractual agreement. The district court's conclusion, that the funds were ef-fectively restricted and that Jefferson would breach its contractual obligations by permitting disbursement for any other reason, is not clearly erroneous. Accordingly, we uphold the determinations of the district court and affirm its holding.

We further lift the stay granted by the district court on February 11, 1987. Consequently, the cashier's check for $185,000 payable to the Internal Revenue Service is no longer held by that stay.

As was agreed by Boatmen's at the February 11 hearing, all penalties and interest accrued because of the delayed payment to the Internal Revenue Service from the date of the denial of Boatmen's motion (February 4, 1987) to the date of issuance of this opinion will be paid by the appellant. Costs to appellant.

AFFIRMED.

---

2. A further justification, not based upon the contract, for denying Boatmen's motion for turnover order concerns the nature of a cashier's·check. Payment to the Internal Revenue Service had been made by the issuance of a cashier's check. A cashier's check is an instrument drawn by a bank on itself. 2 Debtor–Creditor Law ¶ 12.15[B][3]. Since the drawer and the drawee are the same, several courts have suggested that the check has been accepted at issuance, and that a bank may not stop payment on a properly issued cashier's check. *Id.*

*See Munson v. American National Bank & Trust Co. of Chicago,* 484 F.2d 620 (7th Cir.1973): *State of Pennsylvania v. Curtiss National Bank of Miami Springs, Fla.,* 427 F.2d 395 (5th Cir.1970); *In re Kimball,* 16 B.R. 201 (Bankr.M.D.Fla. 1981). "By definition a cashier's check is a bill of exchange drawn by a bank upon itself and accepted in advance by the act of issuance. After issuance defendant bank simply had no right to countermand the cashier's checks." *Munson,* 484 F.2d at 623–24 (citations omitted).