**In re Wayne J. KLEIN.**

**HARRIS TRUST AND SAVINGS BANK, Plaintiff,**

v.

**WAYNE J. KLEIN CORPORATION, Ilene F. Goldstein, Trustee of the Estate of Klein, and United States Fidelity and Guarantee Company, Defendants.**

**Nos. 88 C 4811, 88 C 4812.**

United States District Court, N.D. Illinois, E.D.

Feb. 27, 1989.

John Ward, Antonow & Fink, George A. Joseph, Kirkland & Ellis, Alan DeMars, Spiegel & DeMars, Lawrence Moelmann, Hinshaw, Culbertson, Moelmann, Hoban & Fuller, Corp. Counsel, Affirmative Litigation Div., Chicago, Ill., for plaintiff.

William Brandt, Ilene F. Goldstein, Adrea M. Hauser, Chadwell & Kayser, Ltd., Donald L. Johnson, Johnson & Schwartz, Chicago, Ill., for defendants.

M. Scott Michael, Chicago, Ill., U.S. Trustee.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

This case is before the court on the appeal of defendants Ilene F. Goldstein, trustee of the estate of Wayne J. Klein ("Trustee") and United States Fidelity and Guarantee Company ("USF & G") from a decision of the bankruptcy court granting a motion of plaintiff Harris Trust and Savings Bank ("Harris Bank") for summary judgment. The bankruptcy court ruled that Harris Bank could retain possession of certain collateral pledged by Klein pursuant to a security agreement and subsequent promissory notes. 83 B.R. 968. This court has jurisdiction pursuant to 28 U.S.C. § 158(c). For the reasons set forth below, this court reverses the bankruptcy court's ruling.

## FACTS

For the purposes of this motion, the relevant facts are not in dispute. Beginning in 1984, Harris Bank made certain unsecured loans to the defendant Wayne J. Klein and his wholly owned company, Klein Construction Company ("Klein Construction") in the amounts of $350,000 to Klein individually and $2,000,000 to Klein Construction. On March 12, 1986, these loans were personally guaranteed by Klein with a mortgage on certain Colorado real estate.[1] On the same day, Klein executed a "Security Agreement" with Harris stating in pertinent part:

GRANT OF SECURITY INTEREST

As security for the payment of all loans and advances now or in the future made by Bank to Debtor hereunder and for payment or other satisfaction of all other obligations, debtor hereby assigns to bank and grants to bank a continuing security interest in the collateral....

LIST OF PLEDGED INSTRUMENTS

100% of Klein's outstanding shares of Titan Trading; 172.2 shares of Eagle Ridge Inv. Corp.; and Klein's limited partnership interest in Eagle Ridge Golf and Tennis Club, Ltd.

TERMINATION PROVISION

This Security Agreement shall continue in effect (notwithstanding the fact that from time to time there may be no Obligations or commitments therefor outstanding) until (i) the Bank has received written notice of its termination from the Debtor and (ii) no Obligations or commitments of the Bank which would give rise to any Obligations shall be outstanding.

With the Security Agreement, Klein received a side letter from a vice-president of Harris Bank confirming their understanding that:

When all loans made by Harris Bank to you [Klein] personally within next week are paid in full by their terms and without default, we will return to you the original of your security agreement together with stock certificates you have pledged today.

One week later, Klein executed a $700,000 note with Harris Bank. This note contained a cross-collateralization clause providing in pertinent part:

---

**1.** Unbeknownst to Harris, Klein had already transferred 99.7% of his interest in the Colorado land to several third parties. For purposes of this motion, however, this fact is not relevant.

To secure the payment of this and any and all other liabilities of the undersigned or any of them to said bank, whether now existing or hereafter arising and howsoever evidenced or acquired ... the undersigned hereby grants a security interest to said bank in all property of the undersigned of any kind and description now or at any time hereafter transferred or delivered to or left in or coming into the possession, control or custody of the bank by or for the account of the undersigned.

On May 5, 1986, Klein paid the March 19 note in full.

On June 19, 1986, Klein executed another $700,000 note with Harris Bank containing the identical cross-collateralization clause provision as in the March 19 note. Klein paid this note in full on August 8, 1986. On September 12, Klein requested in writing that Harris Bank return the collateral set forth in the security agreement.

On October 2, 1987, Harris filed suit in the Circuit Court of Cook County, Illinois, against Klein and Klein Construction seeking declaratory judgment that it still possessed a valid security interest, and therefore was entitled to retain the collateral. However, after Klein filed for individual bankruptcy, Harris took his case to the bankruptcy court and on September 10, 1988 filed for summary judgment on the grounds that, because the cross-collateralization clause of the June 19 note unambiguously secured all of Klein's debts to Harris Bank, past and present, the collateral in Harris Bank's possession continued to secure Klein's obligations under the 1984 loans. The bankruptcy court granted the motion.

It first held that the side letter was part of and, accordingly, must be read with the March security agreement, so that Harris Bank's entitlement to retain the collateral terminated when Klein satisfied the March 19 note. The court held, however, that the cross-collateralization provision in the June 19 note unambiguously provided that Harris Bank had a security interest in all property "now ... in the possession, control or custody of (Harris), and that this collateral

secured all of Klein's obligations to Harris Bank." Since the collateral from the March 12 security agreement had never been returned to Klein, and since Klein had not repaid the 1984 loans, the court ruled that Harris was entitled to keep the collateral.

## DISCUSSION

### Procedural Issue

Both sides begin their arguments on appeal with extensive discussions on the appropriate standard on the summary judgment. They agree, of course, that summary judgment is appropriate only where there is "no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). They disagree, however, as to how the burden of showing that a genuine issue of material fact exists should be allocated when the plaintiff is the moving party. Compare Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Although this argument raises some interesting issues, the court need not resolve them here. The only issue before the court is whether the June 19 note is ambiguous, and since, as discussed below, that issue is purely a legal question under Illinois law, the proper allocation of the factual burdens is not important here. Appellants will prevail if, and only if, as a matter of law, the June 19 note was ambiguous.

### Substantive Issue

Before turning to the appellants' arguments, a few settled principles of Illinois law are worth noting. In interpreting a contract, a court must first decide whether or not the contract is ambiguous. National Tea Co. v. American Nat'l Bank and Trust, 100 Ill.App.3d 1046, 56 Ill.Dec. 474, 476, 427 N.E.2d 806, 808 (1981); LaSalle National Bank v. Service Merchandise Co., 827 F.2d 74, 78 (7th Cir.1987). If the court determines the contract is unambiguous, the court declares the meaning of the contract. National Tea Co., 100 Ill.App.3d

at 1049, 56 Ill.Dec. 474, 427 N.E.2d 806; *LaSalle National*, 827 F.2d at 78. If, on the other hand, the court determines that the contract is ambiguous, then the contract's meaning becomes a question of fact for the fact finder. *Hagerty, Lockenvitz, Ginzkey & Assoc. v. Ginzkey*, 85 Ill.App.3d 640, 40 Ill.Dec. 778, 779, 406 N.E.2d 1145, 1146 (1980).

The problem that arises in this case, however, is how a court determines whether a contract is ambiguous. In ruling that the June 19 note's cross-collateralization provision permitted Harris Bank to apply the collateral securing the June note to the 1984 obligations, the bankruptcy court held that the June 19 note was unambiguous on its face so extrinsic evidence could not be used to alter its meaning. The appellants agree that extrinsic evidence may not be used to alter the terms of an unambiguous contract. *See International Administrators v. Life Insurance Co. of North America*, 753 F.2d 1373, 1384 (7th Cir.1985) ("Parol evidence rule excludes evidence which would change the meaning of a written document, if evidence concerns dealings prior to the writing"). They maintain, however, that the bankruptcy court erred in refusing to look to extrinsic evidence in determining whether the contract was in fact unambiguous.

Recently, the Seventh Circuit has suggested that there may be a split among the Illinois courts as to whether or not extrinsic evidence may be used to determine if a contract is unambiguous. *Compare Rakowski v. Lucente*, 104 Ill.2d 317, 84 Ill.Dec. 654, 472 N.E.2d 791 (1984) (ruling that the court must look within the contract's four corners when determining the contract's meaning) *with Zale Construction Co. v. Hoffman*, 145 Ill.App.3d 235, 98 Ill.Dec. 708, 712, 494 N.E.2d 830, 834 (1986) (courts allow extrinsic evidence in determining whether a contract is ambiguous). The Seventh Circuit declined to resolve the conflict, however, choosing instead to leave the issue for the district court on remand.

This court does not find an irreconcilable conflict among the Illinois cases. Illinois courts have always allowed extrinsic evidence to be introduced to show that an apparently unambiguous contract is nevertheless ambiguous. *See Sunstream Jet Express, Inc. v. International Air Service Co.*, 734 F.2d 1258, 1267–68 (7th Cir.1984) (discussing Illinois cases); *see also In re Pearson Bros. Co.*, 787 F.2d 1157, 1161 (7th Cir.1986). *Rakowski* did not alter this rule. It merely held that where an agreement is "comprehensive, precise and unambiguous," the agreement, not the actual intentions of the parties, controls. *Rakowski*, 104 Ill.2d at 323, 84 Ill.Dec. 654, 472 N.E.2d 791. Thus the bankruptcy court should have at least considered extrinsic evidence in deciding whether the June 19 note was "clear, precise, and unambiguous." Had it done so, it could not have rendered judgment for Harris Bank at this stage.

The bankruptcy court agreed with Klein that the cross-collateralization clause in the March 19 note was ambiguous with respect to the obligations it secured since the note could be read as integrated with the March 12 security agreement and the agreement (read with its side letter) provided that the collateral secured only the March 19 note. *See Lippo v. Mobil Oil Corp.*, 776 F.2d 706, 713 n. 13 (7th Cir.1985); *see also Boatmen's National Bank of St. Louis v. Smith*, 835 F.2d 1200 (7th Cir.1987). Nevertheless, the court ruled that the cross-collateralization clause in the June 19 note unambiguously secured the 1984 loans because this was a new note clearly not encompassed by the March 12 security agreement and side letter. This approach ignores two important facts.

First, the language of the cross-collateralization clauses in the March 19 and the June 19 notes are identical, yet the latter note contains no provision suggesting that it is to be read differently than the earlier one. Thus, if the March 19 note was ambiguous—and this court agrees with the bankruptcy court that it was—then surely the June 19 note with the identical language was ambiguous as well.

Second, pursuant to the termination provision of the security agreement, the agreement remained in effect even after the

March 19 note was satisfied. Although the side letter to the March 12 agreement made reference only to the March 19 note, the side letter could be interpreted (by a fact finder) as demonstrating that the collateral was to secure only future obligations between the parties. Were it so interpreted, then it would be for the fact finder to decide whether the "dragnet clause"[2] in the June 19 note, or instead the side letter to the security agreement, actually reflects the intentions of the parties at the time they executed the June 19 note. *See In re Hunter*, 68 B.R. 366 (Bankr.C.D.Ill.1986). Accordingly, summary judgment for Harris Bank on the grounds that the June 19 note was unambiguous cannot be upheld.

## CONCLUSION

The judgment of the bankruptcy court is reversed and the case is remanded to that court for further proceedings consistent with this court's ruling.

---

**2.** The cross-collateralization clauses in the March and June notes are called "dragnet clauses" inasmuch as they do not define precisely what obligations are secured. Dragnet clauses are authorized by § 9–204(3) of the Uniform Commercial Code. *See Stannish v. Community Bank of Homewood–Flossmoor*, 24 B.R. 761, 763 (Bankr.N.D.Ill.1982). They are not favored under Illinois law, but will be enforced where no ambiguity exists and will be interpreted according to the language used. *Id.; see also National Acceptance Co. v. Exchange National Bank*, 101 Ill.App.2d 396, 243 N.E.2d 264 (1968); *Farmers & Mechanics Bank v. Davies*, 97 Ill.App.3d 195, 52 Ill.Dec. 655, 422 N.E.2d 864 (1981).