In re Michael STANNISH and Margaret Stannish, Plaintiffs-Debtors,

v.

COMMUNITY BANK OF HOMEWOOD–FLOSSMOOR and General Finance Company, Defendants.

Bankruptcy No. 82 B 22.
Adv. No. 82 A 747.

United States Bankruptcy Court,
N.D. Illinois, E.D.

Nov. 19, 1982.

Thomas E. Grotta, Chicago, Ill., for debtor.

Gary Moore, Overgaard & Davis, Chicago, Ill., for Community Bank.

Clay Mosberg, Chicago, Ill., for General Finance.

MEMORANDUM AND ORDER

ROBERT L. EISEN, Bankruptcy Judge.

This matter came to be heard on Community Bank of Homewood-Flossmoor's Motion for Summary Judgment as to the secured status of three loans extended to the debtors, Michael Stannish and Margaret Stannish, by Community Bank and one by General Finance Corporation. The court having carefully considered the memoranda filed by the parties, and being fully advised in the premises, does hereby find Communi-

ty Bank to have a valid secured claim in the value of the 1981 Pontiac Phoenix and a valid unsecured claim for the excess, if any. It must be noted, however, that Community Bank in its motion for summary judgment also requests that the court find the value of the car to be $4700. This court is unable to determine the exact value of the car without further hearing.

## FINDINGS OF FACT

Community Bank holds three separate debt instruments signed by the debtors. The first instrument entitled a "Check Credit Account Agreement," was dated May 1, 1976. It created a line of credit which could be drawn upon by the debtors with special checks. The line of credit also provided coverage for checking account overdrafts. The balance due on this agreement was $1,454.20 on January 4, 1982, the date on which the debtors filed their Chapter 7 petition.

The second instrument is a note and security agreement, dated July 21, 1980. This instrument reflects a purchase money loan of $3,600.00, plus credit insurance premiums. The instrument is also a security agreement, identifying a new 1980 Pontiac Phoenix as collateral. The agreement contains the following relevant language in number three of its terms and conditions:

> Debtor(s) agrees that Holder shall have, and there is hereby created in favor of Holder a security interest in the Collateral described herein to secure (i) the payment of the debt evidenced hereby, ... and (iv) all other past, present and future, direct or contingent liabilities of Debtor(s) to Holder. The Holder shall have the right of set-off against any deposits and other sums which may now or in the future be owing by the Holder to the Debtor(s).

As part of the explanatory language on the first page of the agreement, the following is found after the words "Security Interest":

> This loan is secured by a security interest created under this Security Agreement in the property described above which secur-

ity interest may attach to any accessions thereto. In addition to the foregoing security the Holder has a security interest for the payment of all obligations due it in all property and assets of Debtor(s) which are in the possession or control of Holder and a right of set-off or lien on any deposit or sums now or hereafter owed by Holder to Debtor(s). Holder has a Security Interest in the proceeds and the unearned premiums in any insurance required or purchased. This Security Agreement will secure future or other indebtedness.

The title to the Phoenix is in the possession of Community Bank which is listed as the first lien-holder on the face of the title. The balance at the time of the bankruptcy filing was $2,768.39. Debtors continued to make monthly payments of $112.23 as of the time the motion for summary judgment was filed on June 8, 1982 and therefore, the balance due was decreasing each month.

The third instrument is an installment note, dated August 9, 1980, for a $1,000.00 loan to debtors. The balance due on this note at the time of the petition was $654.46.

On November 24, 1980, General Finance Corporation loaned the debtors $2,233.87 which was also secured by the Phoenix automobile. General Finance is listed on the car's title as the second lienholder.

## DISCUSSION

The issue before the court is whether Community Bank may use the value of the car in excess of the amount owed the bank on the purchase money loan to setoff unpaid amounts remaining on other loans extended from Community Bank to the debtor.

 The note and security agreement for the purchase money loan on the car contains language as quoted above which secures prior amounts owned and future advances with the collateral securing the purchase money loan. This clause, referred to as a "dragnet" clause is commonly found in security agreements and is not favored under Illinois law. *National Acceptance*

*Co. v. Exchange National Bank,* 101 Ill. App.2d 396, 243 N.E.2d 264 (1st Dist.1968); *Farmers and Mechanics Bank v. Davis,* 97 Ill.App.3d 195, 52 Ill.Dec. 655, 422 N.E.2d 864 (3rd Dist.1981). Dragnet clauses will be upheld, however, where no ambiguity exists and will be interpreted according to the language used. The law presumes the parties intended the agreement to mean what the language clearly imports. *National Acceptance Co. v. Exchange National Bank, supra; Peoria Savings & Loan & Trust Co. v. Elder,* 165 Ill. 55, 45 N.E.2d 1083 (1897); *Castle v. Powell,* 261 Ill.App. 132 (1931).

The Uniform Commercial Code provides that a secured agreement may cover future advances without an additional agreement. Code Section 9–201 states that "Except as otherwise provided by this Act a security agreement is effective according to its terms between the parties, against purchasers of the collateral and against creditors." Ill.Rev.Stat.1981, ch. 26 Sec. 9–201. Section 9–204 provides that such a security agreement may secure "future advances or other value whether or not the advances or value are given pursuant to commitment." Illinois Rev.Stat. 1981, Ch. 26, Sec. 9–204(3).

In a situation similar to the one at issue here, the Second Circuit applied the Commercial Code and similar New York State common law to find that a dragnet clause in a chattel mortgage extended the value in mortgagor's equipment to security for the note as well as for payments of any obligation or liability due or to become due whether existing or subsequently arising. The security agreement encompassed a contemporaneously made real estate bond and mortgage and hence, also covered debt arising from default on foreclosure of the real estate mortgage. Thus, the mortgagee was entitled to priority over federal tax liens as a result of the dragnet clause. *In re Riss Tanning Corp.,* 468 F.2d 1211 (2nd Cir.1972).

The Second Circuit based its holding determining the character and priority of the debtor's debts on relevant state common-law and statutes. The specific clause at issue, which is similar to the clause before this court was found to be clear and unam-

biguous and therefore would be effective and sufficient to put a subsequent creditor on notice. *Id.* at 1213.

■ In the present case, the language found in the Note and Security Agreement is also clear and unambiguous. The language of the agreement clearly states that: "[t]he Holder shall have the right of set-off against any deposits and other sums which may now or in the future be owing by the Holder to the Debtor(s)"; and in the explanatory portion of the agreement, that "[T]his Security Agreement will secure future or other indebtedness." General Finance Corporation, the subsequent creditor, clearly was or should have been on notice of the Bank's position when it read the note and security agreement which listed the 1980 Pontiac Phoenix as collateral. As a result, General Finance Corporation's position is junior to the bank's in all respects. General Finance should have realized that it did not have a reasonable chance of recovering on its loan to the debtors. The language of the agreement made it clear that Community Bank could use the automobile as security for any past or future advances it made to the debtor.

## VALUATION

■ The debtors, Community Bank and General Finance also ask this court to determine the value of the 1980 Pontiac Phoenix. The court cannot make such a determination from the pleadings and memoranda filed. Such a determination must be made at a hearing before this court pursuant to Section 506(a) of the Bankruptcy Code.

## CONCLUSIONS OF LAW

■ It is well established that clear and unambiguous security agreement clauses extending the collateral to secure past and future advances are valid under common law and the Uniform Commercial Code. Clearly, the clause in question here was clear and unambiguous and provided sufficient notice to the subsequent creditor, General Finance, that their security interest in the 1980 Pontiac Phoenix was secondary to

any other obligations the debtor owed to Community Bank.

Second, the value of the 1980 Pontiac Phoenix cannot be determined on the pleadings and memoranda submitted. Said value must be determined at a hearing under Sec. 506(a) of the Code unless the parties can reach an agreement as to value.

WHEREFORE, IT IS HEREBY ORDERED that defendant's motion for summary judgment is granted as defendants have a valid security in the Pontiac Phoenix and have priority over any interest held by General Finance in the same collateral.