MIDKIFF IMPLEMENT COMPANY, Plaintiff-Appellant, *v.* GRACE E. WORRALL, Indiv. and as Adm'r of the Estate of Donald L. Worrall, Deceased, *et al.*, Defendants-Appellees.

Fourth District   No. 4—82—0838

Opinion filed July 6, 1983.

Robert H. Mehrhoff, of Carrollton, for appellant.

G. Ronald Kesinger, of Jacksonville, *pro se*, for appellees Grace E. Worrall and Moss Auction Co.

Richard T. Mitchell, of Mitchell & Woodruff, of Jacksonville, for appellee Elliott State Bank of Jacksonville.

JUSTICE MILLS delivered the opinion of the court:

Uniform Commercial Code.

Does "all *** farm machinery *** now owned" mean just that in a security agreement?

It does.

We affirm.

Donald Worrall, a Morgan County farmer, found himself beset by the same plight that has befallen many farmers today—he bought farm machinery which he was unable to pay for. In April of 1977, he purchased a New Holland Model 850 round hay baler from the Midkiff Implement Company. In June of the same year, he purchased a 770 W forage pickup, a New Holland Model 80 bale carrier, and a New Idea Model 404 hay rake from Midkiff. Worrall executed a retail installment contract with each purchase and security agreements covering the items were recorded in Greene County, where Midkiff's business is located. Midkiff, however, failed to record its security interest in the items in Morgan County, where Worrall lived.

From time to time, Worrall and his wife, Grace, borrowed money from the First National Bank of Jacksonville, which subsequently merged with the Elliott State Bank of Jacksonville (the Bank). In April of 1979, Worrall and his wife executed a chattel mortgage (the security agreement) giving the Bank a security interest in certain collateral in order to secure their loans at the Bank. That security agreement contained the following description of collateral:

> "First lien under the Uniform Commercial Code of Illinois on *all* machinery, equipment, *including farm machinery and equipment*, fixtures, inventory, crops growing or to be grown, livestock, accounts receivable and general intangibles *now owned* and hereafter acquired and all proceeds thereafter including but not limited to the attached Exhibit A." (Emphasis added.)

The attached Exhibit A did not list the four items Worrall purchased from Midkiff. Within 10 days, the Bank filed a financing statement—containing the same description of collateral—in the Morgan County clerk's office.

Worrall defaulted in his payments to Midkiff and then died in the summer of 1979. His widow was appointed administratrix of his estate. She hired attorney Ronald Kesinger and the Moss Auction Company to assist her in liquidating her husband's estate. After the sale of the decedent's farm machinery at public auction, both Midkiff and the Bank demanded the proceeds from the sale of the four disputed items: the hay baler, the forage pickup, the bale carrier, and the hay rake. Caught between the devil and the deep blue sea, the widow turned to her attorney for guidance. Kesinger advised Mrs. Worrall to pay the proceeds to the Bank, which she did.

Midkiff then filed a complaint in the circuit court of Morgan County against Mrs. Worrall (individually and as adminstratrix of her

husband's estate), Kesinger, the Moss Auction Company, and the Bank (collectively the defendants). The complaint alleged that the defendants had illegally appropriated the proceeds from the sale of the four disputed items. All of the parties—Midkiff and each of the defendants—filed motions for summary judgment. Judge Seator granted the defendants' motions for summary judgment and Midkiff appeals.

We affirm.

On appeal, Midkiff admits that it failed to perfect its security interest in the four items by not filing a financing statement covering the items in Morgan County, the situs of debtor's residence. Midkiff maintains, however, that although it failed to perfect its security interest, it did at least attach a security interest to the four items by entering into a security agreement with Worrall. We agree. Midkiff did attach a valid security interest to the four items.

■■ Midkiff then argues that it should have priority over the Bank to the proceeds because it attached a security interest to the items and the Bank did not. Midkiff bases its argument on the position that although the Bank entered into a security agreement with Worrall and did perfect first by filing in Morgan County, the description of the collateral in the Bank's security agreement—"all *** farm machinery and equipment *** now owned"—was too vague and therefore did not cover the four items. Here, we disagree. Although the collateral description in the Bank's security agreement was very broad, it was sufficient to cover the four items. Consequently, the Bank did have priority over Midkiff to the proceeds of the sale because the Bank attached a valid security interest to the four items and then perfected that interest by filing a financing statement covering the items in Morgan County.

■■ ■ Although we note that the description "all *** farm machinery and equipment *** now owned" is a very broad one and that more careful practice may have dictated the use of a more exact description, we believe that such a description is sufficient. Section 9—203(1) of the Uniform Commercial Code (Ill. Rev. Stat. 1981, ch. 26, par. 9—203(1)) requires that the security agreement between a creditor and a debtor contain a description of the collateral. The standard for judging the adequacy of that description is set out in section 9-110 of the Code (Ill. Rev. Stat. 1981, ch. 26, par. 9—110), which states in full:

> "For the purposes of this Article [9] any description of personal property *** is sufficient whether or not it is specific if it reasonably identifies what is described."

The Illinois Code Comment to section 9—110 states in part:

"The test is whether the description 'reasonably identifies what is described,' which it will do if it describes the property so as to distinguish it from any other property with which it might be confused." (Ill. Ann. Stat., ch. 26, par. 9—110, Illinois Code Comment, at 85 (Smith-Hurd 1974).)

The Uniform Commercial Code Comment to section 9—110 states in part:

"The requirement of description of collateral *** is evidentiary. The test of sufficiency of a description laid down by this section is that the description do the job assigned to it—that it make possible the identification of the thing described." (Ill. Ann. Stat., ch. 26, par. 9—110, Uniform Commercial Code Comment, at 88 (Smith-Hurd 1974).)

The Code's "reasonable identification" test appears to us to allow very broad descriptions of collateral in security agreements.

Last year, this court in *Interstate Steel Co. v. Ramm Manufacturing Corp.* (1982), 108 Ill. App. 3d 404, 438 N.E.2d 1381, held that the security description "all accessories, parts and equipment" was sufficient to include all equipment used in the production of merchandise by the debtor. We also held that the description "merchandise" in the same security agreement was sufficient to cover the debtor's inventory. In both instances we applied the "reasonable identification" test of section 9—110.

Our position, that section 9—110 allows very broad descriptions of collateral to be used in security agreements, is supported by the courts in the vast majority of jurisdictions. The Supreme Court of Minnesota in *James Talcott, Inc. v. Franklin National Bank* (1972), 292 Minn. 277, 286-88, 194 N.W.2d 775, 782, stated:

"The principal function of a description of the collateral in a security agreement is to enable the parties themselves or their successors in interest to identify it, particularly if the secured party has to repossess the collateral or reclaim it in a legal proceeding. ***

* * *

A security agreement should not be held unenforceable unless it is so ambiguous that its meaning cannot reasonably be construed from the language of the agreement itself."

The court in *James Talcott* also stated:

"If the debtor himself is willing to give a creditor a security interest in everything he owns, the code does not prevent it, whether his action is prudent or not. Upon default, the creditor takes everything to which the debtor previously agreed; hence,

identification is no problem." 292 Minn. 277, 287, 194 N.W.2d 775, 782.

In *National Cash Register Co. v. Firestone & Co.* (1963), 346 Mass. 255, 257, 191 N.E.2d 471, 473, the court held that a security agreement covering "all contents of a luncheonette including equipment" was sufficient to include a cash register. In *Empire Machinery Co. v. Union Rock & Materials Corp.* (1978), 119 Ariz. 145, 147, 579 P.2d 1115, 1117, it was held that the description "all earth movers, blades, rollers, lay down machines" was sufficient to include irrigation equipment.

Not only does our broad reading of section 9—110 have the support of our brethren across the nation, but it is also supported by many of the commentators on the UCC. For example, White and Summers in their treatise Handbook of the Law Under the Uniform Commercial Code, at page 910-11 (2d ed. 1980) support allowing the use of broad descriptions in security agreements:

> "The overwhelming majority of courts uphold very broad descriptions. Probably what is at work when courts condemn such descriptions is an unstated (and even unconscious) desire to protect debtors against dragnet clauses subjecting all or virtually all of their property to the claim of a single secured creditor. Such sweeping clauses reduce debtor opportunities to obtain credit from other sources. And they may bespeak creditor greed. Yet, courts that condemn such clauses are not on sound ground. The ability to monopolize collateral—and to have collateral monopolized—comports with freedom of contract."

See also Beard, *The Description of Collateral in Security Agreements and Financing Statements*, 28 Mercer L. Rev. 611, 620 (1977); Seamans, *Commercial Transactions: The Adequacy of the Description of Collateral in Uniform Commercial Code Financing Statements and Security Agreements*, 27 Okla L. Rev. 469, 474 (1974); Phillips, *Agricultural Financing Under the U.C.C.*, 12 Ariz. L. Rev. 391, 394 (1970).

In conclusion, it appears that the commentators along with the courts in the majority of jurisdictions agree with our position that a broad collateral description is sufficient for security agreement purposes.

Admittedly, the description in the case *sub judice* "all *** farm machinery and equipment *** now owned" is broad. But it covers exactly what it says it covers—all of Worrall's farm machinery and equipment. There can be no argument that the hay baler, the forage pickup, the bale carrier, and the hay rake are pieces of farm machin-

ery or equipment. Consequently, they are covered by the description of collateral in the security agreement; the Bank's security agreement attached a security interest to those items; and the Bank achieved priority over Midkiff to the proceeds from the items' sale by perfecting that interest.

Affirmed.

WEBBER, P.J., and MILLER, J., concur.