In re Wayne J. KLEIN, Debtor.

HARRIS TRUST AND SAVINGS
BANK, Plaintiff,

v.

Wayne J. KLEIN and Klein
Corporation, Defendants.

Bankruptcy Nos. 87 A 0535, 86 B 19937.

United States Bankruptcy Court,
N.D. Illinois, E.D.

March 23, 1988.

Ilene F. Goldstein, Andrea M. Hauser, Chadwell & Kayser, Ltd., Chicago, Ill., for the trustee of the Estate of the defendant, Wayne J. Klein.

Melanie Rovner Cohen, John H. Ward, Antonow & Fink, Chicago, Ill., for the plaintiff.

## OPINION AND ORDER ON SUMMARY JUDGMENT

SUSAN PIERSON DEWITT, Bankruptcy Judge.

This matter comes before the Court on plaintiff's motion for summary judgment. It presents two issues for this Court to decide. First, is it proper to decide on summary judgment the plaintiff's claim that it possesses a security interest in certain collateral pledged by the defendant? Second, if so, does the plaintiff, as a matter of law, possess such a security interest?

### BACKGROUND FACTS

Beginning in 1984, plaintiff Harris Trust and Savings Bank ("Harris") made certain unsecured loans to defendant Wayne J. Klein and his wholly-owned company, Klein Construction Co. ("Klein Construction"). On June 22, 1984, Harris loaned $350,-000.00 to Klein individually and on August 14, 1984, Harris provided Klein Construction with a $2,000,000.00 line of credit.

On February 19, 1986, Klein personally guaranteed the $2,000,000.00 that Klein Construction had borrowed from Harris. To secure that guarantee, Klein provided Harris with a mortgage on certain Colorado real estate on March 12, 1986. Unbeknownst to Harris, however, Klein had already transferred 99.97% of his interest in the Colorado land to several third parties.

That same day, Klein also executed a "security agreement" with Harris, and received a "side letter" therefrom. The "security agreement" stated, in pertinent part:

As security for the payment of all loans and advances now or in the future made by Bank to Debtor hereunder and for payment or other satisfaction of all other obligations, Debtor hereby assigns to Bank and grants to Bank a continuing

security interest in the following collateral....

The collateral consisted of all of Klein's outstanding shares of Titan Trading; 172.2 shares of Eagle Ridge Utilities, Inc., 172.2 shares of Eagle Ridge Investment Corp.; and Klein's limited partnership interest in Eagle Ridge Golf & Tennis Club, Ltd.

The one-sentence "side letter", addressed from H. Donald Peterson, Vice-President of Harris, to Klein, briefly stated:

This is to confirm our understanding that when all loans made by Harris Bank to you personally next week are paid in full by their terms and without default, we will return to you the original of your Security Agreement together with stock certificates you have pledged today.

One week later, on March 19, 1986, Klein executed a $700,000.00 note with Harris, which stated in pertinent part:

To secure the payment of this and any and all other liabilities of the undersigned or any of them to said Bank, whether now existing or hereafter arising and howsoever evidenced or acquired ... the undersigned hereby grants a security interest to said Bank in all property of the undersigned of any kind and description now or at my time hereafter transferred or delivered to or left in or coming into the possession, control or custody of the Bank....

Klein paid the March 19th note in full on May 5, 1986. Before he did, however, he allegedly attempted to transfer the Eagle Ridge collateral to a Mr. Frederick Quinn, on April 20, 1986. On June 19, 1986, Klein executed another $700,000.00 note with Harris, which contained a security interest provision identical to the above-quoted terms from the March 19th note. Klein repaid this second $700,000.00 note in full on August 8, 1986.

On August 20, 1986, Klein Construction filed a petition in U.S. Bankruptcy Court for protection under Chapter 11 of the bankruptcy laws of the United States. Although at the time of filing Klein had repaid both $700,000.00 notes, Klein Construction had not fully repaid to Harris the $2,000,000.00 loan of August 14, 1984, that Klein had guaranteed, nor had Klein, himself, fully repaid to Harris the $350,000.00 personal loan of June 22, 1984. On October 2, 1986, Harris filed suit in the Circuit Court of Cook County against Klein and another of his wholly-owned companies, Klein Corporation, seeking, *inter alia*, a declaratory judgment that it possessed a valid security interest in the collateral Klein had pledged to it. In the meantime, Klein had individually become a debtor in this court. On June 12, 1987, Harris removed its action against Klein to this Court. On September 10, 1987, Harris filed a motion for summary judgment on the grounds that, as a matter of law, it possessed a security interest in the collateral Klein pledged to it.

Both the Trustee of Wayne J. Klein's bankruptcy estate, and Klein Construction's bonding company, United States Fidelity and Guarantee ("USF & G"), which have not been joined as formal parties to this action, have filed briefs with this Court opposing Harris' motion for summary judgment, on two grounds. First, they argue that this case presents genuine issues of material fact for this Court to decide and, therefore, it would be improper for this Court to grant summary judgment. Second, they argue that even if summary judgment is proper, Harris does not, as a matter of law, possess a security interest in the Klein collateral that it continues to hold.

## PROCEDURAL ISSUE

Under Federal Rule of Civil Procedure 56(c) it is proper for this Court to grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In its brief to this Court, which USF & G has adopted, the Trustee argues that the Supreme Court has interpreted Fed.R.Civ.P. 56 as imposing upon the moving party the burden of presenting "evidence (which is) not merely colorable, but which is *significantly probative* and which *precludes the*

*rendering of a contrary verdict"* (emphasis added). The Trustee cites two recent Supreme Court cases, *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), and *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), for this proposition. The Trustee goes on to argue that since Harris has failed to meet this burden, this Court should deny Harris' motion for summary judgment.

The Trustee has misread *Celotex* and *Anderson.* In *Celotex,* the Court clarified the following language from its decision in *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970): "both the commentary on and the background of the 1963 Amendment (to rule 56) conclusively show that it was not intended to modify the burden of the moving party ... to show initially the absence of a genuine issue concerning any material fact." 398 U.S. at 159, 90 S.Ct. at 1609. Interpreting this language, the *Celotex* Court stated:

> We do not think the *Adickes* language quoted above should be construed to mean that the burden is on the party moving for summary judgment to produce evidence showing the absence of a genuine issue of material fact, even with respect to an issue on which the non-moving party bears the burden of proof. Instead, as we have explained, *the burden on the moving party may be discharged by "showing"—that is, pointing out to the District Court*—that there is an absence of evidence to support the non-moving party's case.

*Celotex,* 106 S.Ct. at 2554 (emphasis added). The Court went on to note that "[i]t would surely defy common sense to hold that the District Court could have entered summary judgment *sua sponte* in favor of petitioner ... but that petitioner's filing of a motion requesting such a disposition precluded the District Court from ordering it." *Id.*

Thus, under *Celotex,* all Rule 56 requires Harris to do is "show"—i.e., "point out"—to this Court that there is no genuine issue of material fact. This Court is persuaded that Harris has met this burden. There-fore, the burden of proof shifts to the adverse party—i.e. the Trustee—to set forth "specific facts showing that there is a genuine issue for trial." *Anderson,* 106 S.Ct. at 2511. It is true, as the Trustee argues, that, under *Anderson,* this evidence must not be "merely colorable" but instead must be "significantly probative." *Id.* But it is the Trustee, not Harris, who must make this showing. *Id.*

■ In its surreply and its "Statement of Genuine Issues Disputed Facts" (sic) the Trustee sets forth numerous matters allegedly in dispute in this case. As the *Anderson* Court noted, however, "only disputes about facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 106 S.Ct. at 2510. The outcome of this suit turns on whether Harris possesses a security interest in the Klein collateral it holds. Under the governing law, a security interest is a "lien created by agreement." 11 U.S.C. § 101(43). Whether an agreement creates a lien depends on state law. See *Butner v. United States,* 440 U.S. 48, 54–57, 99 S.Ct. 914, 917–19, 59 L.Ed.2d 136 (1979). Under the Uniform Commercial Code ("U.C.C."), a security interest is not enforceable against the debtor or a third party and does not attach to collateral unless:

(a) the collateral is in the possession of the secured party pursuant to agreement or the debtor has signed a security agreement which contains a description of the collateral ...; and

(b) value has been given; and

(c) the debtor has rights in the collateral Ill.Rev.Stat. ch. 26, para. 9–203(1) (1987).

The issue that the parties ask this Court to decide is, then, whether Harris possesses the Klein collateral "pursuant to agreement," and, if so, what the conditions of that agreement are. Harris claims that the various contractual documents it executed with Klein evidence such an agreement. While the Trustee disagrees, it does not question the validity of the documents upon which Harris relies. Since the Trustee disputes only the legal effect that this Court should give to the documents Harris

proffers, we conclude that this is the very sort of issue that the Supreme Court, in *Anderson,* contemplated as being proper for adjudication on motion for summary judgment.

### SUBSTANTIVE ISSUE

The parties admit entering into a security agreement that, at one time at least, entitled Harris to retain the Klein collateral. What they dispute are the conditions of that security agreement, and what, if any, effect it has today. The Trustee argues that Harris was entitled to retain the collateral *only* until Klein repaid the loan of March 19th. Since Klein repaid that loan on a timely basis, the Trustee argues that Harris' security interest has long since lapsed and, therefore, Harris is no longer entitled to possess the collateral. Harris replies that it is entitled to possess the collateral on two grounds. First, the security agreement required Klein to repay all loans "without default," a condition Harris claims Klein never fulfilled. Second, Harris argues that even if Klein did not default, he executed subsequent cross-collateralization agreements with Harris that, separate and apart from the original security agreement, entitle Harris to retain the collateral.

Default Issue

■ The Trustee properly urges this Court to read the March 12th "security agreement" and the March 12th "side letter" together as a single contract. Where an agreement is evidenced by separate documents that were executed at the same time between the same parties for the same purpose and as parts of a single transaction they are to be read together and construed as a single contract. *Lippo v. Mobil Oil Corp.,* 776 F.2d 706, 713 n. 13 (7th Cir.1985). In this case, Harris and Klein executed both the "security agreement" and the "side letter" on the same day for the same purpose—to secure Klein's debt to Harris. This Court concludes, therefore, that the parties intended the two documents to be read as comprising a single contract.

■ The Trustee is further correct in urging this Court to read the specific language of the "side letter" as controlling the more general language of the "security agreement". As the *Lippo* court noted, where there are conflicting general and specific provisions relating to the same subject in a contract, the specific provisions should control. *Id.* at 713. Thus, where the "side letter" states that Harris will return the Klein collateral "when all loans made by Harris Bank *to you personally next week* are paid in full by their terms and without default ...," this language controls over the "security agreement's" broader statement that the collateral is given "[a]s security for the payment of *all* loans and advances *now or in the future* made by Bank to debtor hereunder and for payment or other satisfaction *by all other obligations* ..." (emphasis added). The only reasonable interpretation of these clauses is that, as of March 12th, the agreement of the parties was that the Klein collateral would secure only those loan obligations Klein undertook that week.

■ Next, this Court must consider what those loan obligations were. The plain language of the controlling March 12th "side letter" obliged Klein to repay the March 19th loan "without default." The Trustee argues that this condition only required Klein to repay the loan on time. Harris points out, however, that the parties specifically defined in section five of the "security agreement" what other acts on the part of Klein would constitute a default, including:

5.1.1. The making of any any (sic) representation or warranty by or on behalf of the Debtor to the Bank under or in connection with this Security Agreement which is materially false as of the date it was made;

and

5.1.4. The transfer or other disposition of any material portion of the Collateral, either voluntarily or involuntarily, in any manner not permitted by Section 4.1.6.

The same *Lippo* rationale requires this Court to adopt the specific language of these portions of section five of the "secur-

ity agreement" as controlling over the more limited interpretation that the Trustee asks us to infer from the "side letter" wording regarding what constitutes default. *See Lippo,* 776 F.2d at 713.

Next, this Court must consider whether Klein violated these default provisions. Harris argues that when Klein represented on March 12th that he had good, indefeasible title to the Colorado real estate—when he had actually already transferred 99.97% ownership to several third parties—Klein made a materially false representation in violation of section 5.1.1. Further, Harris argues that when Klein, on April 20th, attempted to transfer the Eagle Ridge collateral to Mr. Frederick Quinn, Klein voluntarily transferred a material portion of the collateral in violation of Section 5.1.4.

The Trustee responds by arguing that since Klein publicly recorded the 99.97% transfer of his Colorado property before mortgaging it to Harris as collateral in the March 12th "security agreement", Klein made no materially false representation. The Trustee's reasoning seems to be that since Harris could have checked the public record, it cannot now assert that it was misled. Furthermore, the Trustee argues that Harris' claim that Klein wrongfully attempted to transfer the Eagle Ridge collateral is based merely on heretofore unproven allegations set forth in another lawsuit, *Frederick J. Quinn v. Wayne J. Klein et al.,* No. 87 A. 868.[1] Such allegations, the Trustee argues, are insufficient to establish a default. Finally, the Trustee argues that even if Klein did mislead Harris or wrongfully attempt to transfer the Eagle Ridge collateral, the law does not entitle Harris to now retain the collateral.

It is clear to this Court that, for the purpose of the question presented on summary judgment, it makes no difference whether Klein defaulted on his "security agreement." If we find, as the Trustee

urges, that Klein did not default, we must then decide Harris' second contention—namely, that Klein subsequently pledged the collateral to secure other obligations that remain unfulfilled, thereby entitling Harris to retain possession of the collateral in question. Conversely, if we find, as Harris urges, that Klein did default, Harris' right to possess the collateral is tempered by Klein's right to redeem under the Uniform Commercial Code:

> At any time before the secured party has disposed of collateral or entered into a contract for its disposition under Section 9–504 or before the obligation has been discharged under Section 9–502(2) the debtor or any other secured party may, unless otherwise agreed in writing after default, redeem the collateral by tendering fulfillment *of all obligations secured by the collateral* as well as the expenses reasonably incurred by the secured party....

Ill.Rev.Stat. ch. 26, para. 9–506 (1987) (emphasis added). Consequently, even if we find that Klein's alleged violations of 5.1.1. and 5.1.4. of the "security agreement" constituted a default, we would still have to determine whether Klein's timely repayment of the $700,000.00 March 19th and June 19th loans constituted "tendering fulfillment of all obligations secured by the collateral" under Section 9–506, thereby entitling Klein to redemption. To make this determination, we have to consider whether the phrase "all obligations secured by the collateral" includes Klein's $350,000.00 personal loan of June 22, 1984, and Klein's guarantee of Klein Construction's $2,000,-000.00 line of credit. Thus, in sum, regardless of how this Court resolves the default issue, this case ultimately turns on whether, after March 12th, Klein pledged the collateral in question to Harris to secure other obligations still outstanding. It is, therefore, to a discussion of this pivotal

---

1. In that proceeding, Frederick Quinn claims that Klein sold his "Eagle Ridge Interests" to Quinn pursuant to an agreement entitled "Agreement to Assign Limited Partnership Interest" ("Assignment Agreement."). Quinn claims that, in consideration for these interests, he paid Klein a down payment of $5,000.00 on April 20,

1986,—after Klein had provided these same interests to Harris as collateral pursuant to the March 12th "security agreement." Quinn claims that he paid Klein the balance of $100,-000.00 on September 12, 1986. Complaint at 3–4.

"cross-collateralization" issue that this opinion now proceeds.

Cross–Collateralization

■ Harris argues that, whatever the extent of the security interest it obtained in the March 12th "security agreement," the promissory notes that Klein executed on March 19th and June 19th granted Harris a second and third security interest in the Klein collateral, securing all of Klein's outstanding obligations to the bank. Harris points out that in both notes Klein agreed that "[t]o secure the payment of this and any ... other liabilities of the undersigned ... (Klein) hereby grants a security interest to (Harris) in all property of (Klein) ... now ... in ... the possession, control or custody of (Harris)...." Harris asserts that by this language the parties intended to modify the March 12th "side letter" and expand the obligations secured by the collateral pledged therein.

The Trustee urges that the parties intended the March 12th "side letter" to limit the obligations secured by the collateral. Moreover, the Trustee argues that the language in both the March 19th and June 19th notes that purportedly grants Harris a second and third security interest in the Klein collateral comprises boilerplate "dragnet clauses" which Illinois law generally disfavors and which, because they are fatally vague and overbroad, should not be enforced by this Court.

The Trustee, in effect, asks this Court to rule that the cited language from the March 19th and June 19th promissory notes is controlled by the language in the March 12th "side letter." The Seventh Circuit Court of Appeals has noted that, in Illinois, the parol evidence rule excludes evidence which would change the meaning of a written document, if the evidence concerns dealings *prior* to the writing. *International Administrators v. Life Ins. Co. of North America*, 753 F.2d 1373, 1384 (7th Cir.1985) (emphasis added). The *International Administrators* court stated:

> Where a written agreement shows a complete legal obligation, without uncertainty as to the object and extent of the obligation, evidence of an earlier agree-

ment cannot be introduced to add another term to the agreement, even though the earlier agreement may contain writing on the particular term to which evidence is directed.

*Id.* However, where the court finds the prior writing not to be an "earlier agreement," but rather a "step in an ongoing series of negotiations ..." that the parties intend to constitute an integrated agreement, such evidence is admissible. *Id.* While the language of the March 12th "side letter" concerning "[a]ll loans made ... to you personally *next week* ..." (emphasis added) might, *arguendo*, evidence the parties' intent that the March 12th "side letter" and the March 19th promissory note comprise a single integrated agreement, no such language links the March 12th "side letter" to the June 19th note. Clearly, then, the parol evidence rule precludes this Court from looking to the March 12th "side letter" to interpret the language of at least the June 19th promissory note. Moreover, as this Court held in *Stannish v. Community Bank of Homewood–Flossmoor*, 24 B.R. 761 (Bankr.N.D. Ill.1982), "the law presumes the parties intended the agreement to mean what the language clearly imports." *Id.* at 763. Thus, the law requires this Court to presume that when, in the June 19th promissory note, Klein granted Harris a security interest in all property "now ... in the possession control or custody of (Harris) ..." to secure the payment of "any ... other liabilities of (Klein) ...," the parties intended that Klein granted Harris a security interest in the stocks and other collateral in Harris' possession to secure not only the $700,000.00 note, but also Klein's outstanding $350,000.00 personal loan and $2,000,000.00 guarantee.

■ The Trustee attempts to rebut this presumption by introducing copies of internal memoranda executed by Harris officers that demonstrate that certain bank officers considered Klein's $350,000.00 loan and $2,000,000.00 guarantee to be *unsecured* obligations as late as January 20, 1987. It is not readily apparent whether the execution of these memoranda is "performance"

as contemplated by the parties (to the "security agreement") and therefore available under a "course of performance" theory to help interpret what the parties' intentions were. *See, e.g.,* Ill.Rev.Stat. ch. 26, para. 2-208 (1987). Moreover, even if the execution of these memoranda does constitute such performance, Klein's failure to repossess the collateral after repaying the March 19th promissory note—an action he arguably would have undertaken had the parties intended the Klein collateral to secure *only* that loan—demonstrates that the parties' course of performance is, at best, equivocal evidence of their intent on this point. Thus, the presumption that Klein intended to secure all outstanding obligations with the collateral Harris possessed must stand.

Finally, this Court must consider whether to enforce the cross-collateralization agreement. It is true, as the Trustee notes, that cross-collateralization agreements are generally not favored in Illinois. *Stannish,* 24 B.R. at 762. This Court has held that cross-collateralization clauses will be upheld, however, where no ambiguity exists, and will be interpreted according to the language used. *Id.* at 763.

█ The requirement that the clause not be ambiguous may arise in one of two contexts. First, the clause may be unclear as to exactly what *collateral* the debtor is pledging to secure the loan. *See, e.g., Matter of Schmaling,* 783 F.2d 680 (7th Cir. 1986). In *Schmaling,* the court held that "[a] security interest granted by a debtor to a creditor is limited strictly to the property or collateral described in the security agreement." *Id.* at 682. The standard for judging the adequacy of that description is set out in § 9-110 of the U.C.C., which states: "For the purposes of [Article 9] any description of personal property ... is sufficient whether or not it is specific if it reasonably identifies what is described." Ill.Rev.Stat. ch. 26, para. 9-110 (1987). The Illinois Appellate Court has stated that the "reasonable identification test appears to us to allow very broad description of collateral in security agreements." *Midkiff Implement Co. v. Worrall,* 116 Ill.App.3d 546,

549, 71 Ill.Dec. 655, 657, 451 N.E.2d 623, 625 (4th Dist.1983). That court went on to note:

> The overwhelming majority of courts uphold very broad descriptions. Probably what is at work when courts condemn such descriptions is an unstated (and even unconscious) desire to protect debtors against dragnet clauses subjecting all or virtually all of their property to the claim of a single secured creditor. Such sweeping clauses reduce debtor opportunities to obtain credit from other sources. And they may bespeak creditor greed. Yet Courts that condemn such clauses are not on sound ground. The ability to monopolize collateral—and to have collateral monopolized—comports with freedom of contract.

*Id.* at 550, 71 Ill.Dec. at 658, 451 N.E.2d at 626 (quoting White & Summers, Handbook of the Law Under the Uniform Commercial Code, 910-11 (2d ed. West 1980)). Where, as here, the collateral is already in the possession of the secured party at the time the debtor grants the security interest, and the language of the security agreement states that the debtor "[g]rants a security interest ... in all property of (Klein) now ... in ... the possession, control or custody of (Harris) ...," and the collateral remains in the possession of the secured party for the duration of the loan, this Court believes the instrument "reasonably identifies" the collateral described as required by U.C.C. § 9-110. Moreover, this clause did not subject all or virtually all of Klein's property to the claim of a single creditor, nor has the Trustee argued or presented any evidence that the clause reduced Klein's opportunity to obtain credit from other sources. Thus, the clause in question also did not lead to the sort of abuses which those courts that more narrowly construe the "reasonable identification" requirement seek to avoid.

█ The second context in which ambiguity of language might cause this Court to invalidate a cross-collateralization agreement is the amount of indebtedness secured by the agreement. This Court has held that "it is well established that clear and unambiguous security agreement

clauses extending the collateral to secure *past* and future advances are valid under common law and the Uniform Commercial Code." *Stannish*, 24 B.R. at 763 (emphasis added). This conclusion derives from the very language of the Uniform Commercial Code, which in section 9–204(3), provides that a security agreement may secure "future advances *or other value* whether or not the advances or value are given pursuant to commitment." Ill.Rev.Stat. ch. 26, para. 9–204(3) (1987) (emphasis added). Where a clause extending collateral to secure prior obligations is ambiguous, however, such a clause fails to create a security interest in the collateral to secure the prior loan. *See, e.g. In re Hunter*, 68 B.R. 366 (Bankr.C.D.Ill.1986).

This Court, in *Stannish*, held language similar to that employed in the June 19th promissory note to be clear and unambiguous. *Stannish*, 24 B.R. at 763. The *Stannish* language stated: "[T]he holder shall have the right of set-off against any deposits and other sums which may now or in the future be owing by the holder to the Debtor(s)"; and in the explanatory portion of the agreement stated: "[T]his security Agreement will serve future or other indebtedness." *Id.* The *Stannish* agreement also stated:

> In addition to the foregoing security the Holder has a security interest for the payment of all obligations due it in all property and assets of Debtor(s) which are in the possession or control of Holder and a right of set-off or lien on any deposits or sums now or hereafter owed by Holder to Debtor(s).

*Id.* at 762.

The Appellate Court of Illinois has also held language similar to that which the parties employed in the June 19th promissory note to be unambiguous. *National Acceptance Co. of America v. The Exchange Nat. Bank of Chicago*, 101 Ill.App. 2d 396, 243 N.E.2d 264 (1st Dist.1968). In *National Acceptance*, the court held that a trust deed issued by a debtor to secure certain promissory notes also secured other obligations that the debtor owed to the lender under the following language:

> Whereas, Mortgagor has executed, acknowledged and delivered this trust deed to secure, in addition to the note described above, any and all sums, indebtedness, and liabilities of any kind now or hereafter owing or to become due from Mortgagor to holders of the Note, however created, incurred, evidenced, acquired, or arising, whether under the note or this trust deed or any other instruments, obligations, contracts or agreements of every kind now or hereafter existing or entered into by and between Mortgagor and holders of the Note or otherwise, and whether direct, indirect, primary, secondary, fixed or contingent, together with interest thereon as provided in said instruments, and any of the foregoing, all of which said sums, indebtedness and liabilities are hereinafter referred to as 'future advances', as aforesaid together with any such instruments, are hereby expressly secured by this trust deed....

*Id.* at 403–04, 243 N.E.2d at 268.

The *National Acceptance* court, in holding that the language secured, in addition to the promissory notes, all future indebtedness, stated:

> The intention of the contracting parties could not be evidenced by more certain terms. Although the deeds employ the broadest possible terminology in describing what debts fall under the umbrella of security, it must be remembered that [Debtor] was under no obligation to enter into agreements containing such sweeping language. The sympathy one might entertain for the [Debtor] should be tempered by remembering that contracting parties enjoy the freedom to employ in the marketplace whatever they possess of wisdom or folly.

*Id.* at 405, 243 N.E.2d at 268.

This Court finds that the language in the June 19th note in which Klein granted Harris a security interest in the collateral in question to secure the payment of "this and any and all other liabilities of the undersigned ..." to be no less clear and unambiguous than the language in *Stannish* and *National Acceptance*.

The Trustee's reliance on *In re Hunter* is misplaced. In *Hunter,* the issue was whether a note that stated it was secured by a mortgage, but made no reference to collateral held by the secured party pursuant to a prior agreement, was cross-collateralized. The court held that no cross-collateralization took place, noting that: "Had the defendant wanted to cross-collateralize the ... loan, it would have been a simple matter to add to the note a reference to the security agreement covering the Collateral, just as it added a reference to the mortgage." *Hunter,* 68 B.R. at 369. Here, the facts are just the opposite of *Hunter.* The June 19th note that Klein executed specifically granted Harris a security interest in the collateral it held to secure all of Klein's outstanding obligations. Accordingly, Harris is entitled to retain that collateral until those obligations are satisfied.

THEREFORE, IT IS HEREBY ORDERED that plaintiff's motion for summary judgment is granted.

