John C. MAXWELL, et al.,
Plaintiffs-Appellees,

v.

LUCKY CONSTRUCTION COMPANY, INC., Defendant-Appellant.

No. 82–5782.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 2, 1983.

Decided July 19, 1983.

As Amended Aug. 22, 1983.

Scott A. Wilson, Little, Mendelson, Fastiff & Tichy, San Diego, Cal., for defendant-appellant.

Wayne Jett, Jett, Clifford & Laquer, Los Angeles, Cal., for plaintiffs-appellees.

Before ELY, SNEED, and TANG, Circuit Judges.

ELY, Circuit Judge:

Lucky Construction Company [Lucky] appeals from a judgment finding it in breach of a collective bargaining agreement entered into with the International Union of

Operating Engineers, Local No. 12. Suit was initiated against Lucky under § 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a) (1976), by the trustees of the Operating Engineers' fringe benefit funds. The trustees successfully claimed that Lucky was delinquent in making required payments to the trusts on behalf of a Lucky employee, John Sampson. The District Court awarded to the trusts $12,410 in damages and $15,306 in attorney's fees. 545 F.Supp. 213. Lucky contests both the District Court's finding of delinquency and the amount of the District Court's award of attorney's fees. We affirm the finding of delinquency and modify the award of fees.

## FACTUAL BACKGROUND

From 1974 through 1977, Lucky had collective bargaining agreements with both Operating Engineers, Local No. 12 and the California District Council of Laborers. Each agreement required Lucky to make contributions to respective trust funds on behalf of employees performing work covered by the agreements. While these agreements were in effect, Lucky employed John Sampson in the capacity of an operating engineer. Until August of 1975, all of Lucky's trust fund contributions on behalf of Sampson were paid to the Operating Engineers' trusts. From September of 1975 through the termination date of the Operating Engineers agreement in 1977, all of Lucky's trust fund contributions on behalf of Sampson were paid to the Laborers' trusts. Both before and after September of 1975, however, Sampson's primary job responsibilities were covered solely by the Operating Engineers agreement.

Sampson requested Lucky to contribute on his behalf to the Laborers' trusts, rather than to the Operating Engineers' trusts. Sampson had been a member of the Laborers Union since 1949. As a result, his pension benefits under the Laborers' trusts were higher than his pension benefits under the Operating Engineers' trusts. Correspondingly, Lucky's contribution obligation on behalf of Sampson was greater with respect to the Laborers' trusts. Lucky

wished, nevertheless, to honor Sampson's request because he was a valuable worker and difficult to replace. Lucky instituted the contested arrangement after securing the oral approval of Andy Groshins, the Operating Engineers Union representative with whom Lucky typically dealt in matters pertaining to the collective bargaining agreement. Groshins was one of the signatories to the agreement between Local No. 12 and Lucky.

The plaintiff trustees claimed that Lucky's arrangement on Sampson's behalf constituted a breach of the collective bargaining agreement between Lucky and Local No. 12. The District Court agreed, holding that oral modification of a collective bargaining agreement is invalid as a matter of law to the extent the modification pertains to payment of fringe benefit contributions. This holding was based entirely on interpretation of § 302(c)(5) of the Labor Management Relations Act, 29 U.S.C. § 186(c)(5) (1976), and relied heavily on the interpretation accorded § 302(c)(5) in our recent decision in *Waggoner v. Dallaire*, 649 F.2d 1362, 1366 (9th Cir.1981). The key issue presented on this appeal is whether the contested arrangement is unlawful under our interpretation of § 302(c)(5) as articulated in *Waggoner*. Our review of the District Court's conclusion of law is de novo. *United States v. Mississippi Valley Generating Co.*, 364 U.S. 520, 526, 81 S.Ct. 294, 297, 5 L.Ed.2d 268 (1960).

## ANALYSIS

### I. *Application of § 302(c)(5)*

Section 302 of the Labor Management Relations Act forbids employers from transferring value to union representatives. 29 U.S.C. § 186 (1976). Section 302(c) outlines several closely defined exceptions to this prohibition. Section 302(c)(5) permits employers to contribute to union trust funds established for the sole and exclusive benefit of employees and their dependents. This exception includes, however, a number of limitations on the nature and management of the trusts.[1]

Section 302(c)(5)(B) requires that employees

---

[1.] Section 302(c)(5)(A) lists the limited purposes for which the trust funds may be disbursed.

The congressional objective in enacting § 302 was to inhibit corrupt practices in the administration of employee welfare funds established through the collective bargaining process. *Waggoner*, 649 F.2d at 1366. The limitations incorporated in the trust contributions exception are designed to maintain this objective. *Id.* One limitation under § 302(c)(5) is that the basis on which the employer is to pay trust contributions must be specified in a written agreement. 29 U.S.C. § 186(c)(5)(B) (1976). Although § 302(c)(5) nowhere expressly prohibits oral modification of trust agreements, *Waggoner* held that the writing requirement, in light of the overall anti-corruption purpose of § 302, implies an oral modification prohibition. 649 F.2d at 1366. *Accord, San Pedro Fishermen's Welfare Trust Fund Local 33 v. Di Bernardo*, 664 F.2d 1344, 1345 (9th Cir.1982).

In *Waggoner,* the employer signed a collective bargaining agreement with the International Union of Operating Engineers, Local 12, on the assurance of a Local 12 business agent that he would not enforce the terms of the agreement. 649 F.2d at 1365. The trustees of the Operating Engineers' fringe benefit trusts brought suit against the employer to collect delinquent trust contributions required under the unenforced collective bargaining agreement. We observed that a rule permitting oral modification of written trust agreements would defeat the elaborate provisions established under § 302(c)(5) to protect trust beneficiaries. *Id.* at 1366. We found agreement in a Third Circuit decision, *Lewis v. Seanor Coal Co.,* 382 F.2d 437, 441–44 (3rd Cir.1967). The court in *Lewis* discerned that it would be illogical for Congress to require a writing in order to preclude fraud, collusion, and corruption, and yet to allow oral modification of the writing. *Id.* at 443.

Lucky urges that the factors in *Waggoner* that prompted invocation of a policy against oral modification of trust agreements are not present in the case before us. The secrecy of the oral modification in *Waggoner* rendered the employee beneficiaries vulnerable to the fraud against which Congress sought to protect them. Moreover, the modification was, in fact, disadvantageous to the employees. In contrast, the oral modification in the present case was both fair and effectuated with the knowledge and consent of the employee beneficiary.

Neither the lack of secrecy nor the fairness of the contested oral arrangement are, we believe, grounds on which to excuse the writing requirement of § 302(c)(5). The knowledge and participation of the affected employee are not adequate substitutes for the protection afforded by the writing requirement. Neither an individual employee nor an authorized bargaining representative may, therefore, waive the protections of § 302(c)(5) by accepting oral modification of the employer's written obligations to the trusts. *See J.I. Case Co. v. NLRB,* 321 U.S. 332, 339, 64 S.Ct. 576, 581, 88 L.Ed. 762 (1944) (suggesting that even where waiver is advantageous to an individual employee, an individual agreement may be superseded by the protective requirements of the federal labor acts).

Nor does fairness rescue an otherwise invalid oral modification of an employer's trust contribution obligation. Were we to initiate a system of case by case judicial review of oral modifications, we would render the protective writing requirement less effective by exposing both union and employer to corrupt bargain temptation. *Lewis,* 382 F.2d at 443. Judicial evaluation of the nature and circumstances of contested oral modifications would not constitute a deterrent equal to the congressionally mandated writing requirement.[2] We therefore

---

and employers be equally represented in the administration of the fund. In addition, the fund must be audited annually and the results made available to interested persons. Section 302(c)(5)(C) adds that funds for employee pen-

sions and annuities must be kept in a separate trust.

2. Finally, Lucky asserts that the reporting forms of the Laborers' trusts, on which Lucky's contributions on behalf of Sampson are noted,

uphold the District Court's conclusion that the alleged oral modification was of no effect.

## II. *Attorney's Fees*

■ The award of attorney's fees is a matter within the discretion of the trial court. An award will not be disturbed on appeal absent a showing of abuse of discretion. *Seymour v. Hull & Moreland Engineering,* 605 F.2d 1105, 1116 (9th Cir.1979).

Attorney's fees were properly available to the trustees under the Master Labor Agreement between the Southern California Contractor's Association and Local No. 12. The Master Agreement was incorporated by reference into Lucky's agreement with Local No. 12. The Master Agreement states, in relevant part: "All signatory employers found to be delinquent shall pay for all legal and auditing costs in connection with such delinquency." Without explanation, the District Court awarded to the trustees all but $2,000 of their requested $17,306 in legal fees.

■ The District Court is required to consider a number of factors in assessing the amount of the award. Failure to consider pertinent factors constitutes an abuse of discretion. *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67, 70 (9th Cir.1975), *cert. denied,* 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976). In *Kerr,* we adopted the following guidelines for consideration in determining reasonable attorney's fees:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney

due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Id.*[3]

■ Our review of the amount of fees awarded to the Operating Engineers' trusts, in light of these guidelines, leads us to conclude that the District Court neglected factors tending to reduce the amount of the award. The case went before the District Court on stipulated facts. There was no trial. The action rested on but one relatively simple question of law to which *Waggoner* supplied the answer. Moreover, when the trustees initially brought suit against Lucky, they unsuccessfully claimed delinquencies on behalf of five Lucky employees other than Sampson.[4] Under the terms of the Master Agreement, the trustees are entitled to legal fees only in connection with a finding of delinquency. Although we are fully cognizant that the preparatory legal work on the original six claims must have overlapped substantially, the trustees are, nevertheless, not entitled to fees with respect to five of the claims. Approximately one half of the total attorney hours expended on the action below had expired at the point in time at which the trustees pursued claims only on behalf of Sampson.

We find that the District Court abused its discretion in awarding excessive attorney's

constitute a writing in satisfaction of the § 302(c)(5) writing requirement. The reporting forms are merely evidence of an agreement between Lucky and either the Laborers Union or both the Laborers Union and the Operating Engineers Union. The reporting forms do not contain the "detailed basis on which such payments are to be made" in compliance with § 302(c)(5)(B).

**3.** In *Hummell v. S.E. Rykoff & Co.,* 634 F.2d 446, 453 (9th Cir.1980), we cited five additional factors not relevant here.

**4.** Claims on behalf of two of these additional employees were simply dropped before trial. At approximately the same time, claims on behalf of the remaining three were settled in an out-of-court agreement. In the settlement agreement, the trustees expressly waived all entitlement to damages and Lucky admitted no liability.

fees. To avoid the unnecessary delay and expense of a remand, we order reduction of the amount of the award to $10,000. In light of the factors present in this case, we would be unable to approve a larger award. Each side will bear its own legal fees and costs on this appeal.

The judgment of the District Court is affirmed in part and reversed in part.