828 F.2d 576
 BUILDING SERVICE EMPLOYEES PENSION TRUST, Building Service
Health & Welfare Trust Fund, George Hardy, G.M. Kelso, as
Trustees of Building Service Employees Pension Trust and
Building Service Health & Welfare Trust Fund,
Plaintiffs/Appellants/Cross-Appellees,
v.
AMERICAN BUILDING MAINTENANCE CO., a California Corporation,
Defendant/Appellee/Cross-Appellant.
 Nos. 86-2251, 86-2240.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 17, 1987.
Decided Sept. 22, 1987.
 
 Philip M. Miller, San Francisco, Cal., for plaintiffs/appellants/cross-appellees.
 J. Morrow Otis, San Francisco, Cal., for defendant/appellee/cross-appellant.
 Appeal from the United States District Court for the Northern District of California.
 Before KENNEDY, FERGUSON and WIGGINS, Circuit Judges.
 KENNEDY, Circuit Judge:
 
 
 1
 The Building Service Employees Pension Trust and Health and Welfare Trust (the Trusts) appeal the district court's grant of summary judgment in favor of Allied Building Maintenance Co. (ABM). We see a question of fact here, on the issue of mistake; and we reverse.
 
 
 2
 In early 1984, a conflict between the Trusts and ABM was resolved when ABM agreed to pay delinquent contributions for the years 1978, 1979, and 1980. Audits had revealed that delinquent contributions of $296,726.74 were owed to the Health and Welfare Trust and $146,718.29 were owed to the Pension Trust. ABM paid these principal sums to each Trust.
 
 
 3
 The Trusts next demanded interest on the principal that ABM had paid, and it is the interest dispute which concerns us here. ABM calculated its potential liability to be as much as $200,000. It asked Elizabeth Leavy, the Trusts' attorney, to designate the appropriate party handling the matter on behalf of the Trusts and the exact amount of interest demanded by the Trusts.
 
 
 4
 On November 16, 1984, attorney Leavy wrote ABM that she had been authorized to act for the Trusts. She demanded interest; but, the Trusts now allege, her papers contained a glaring mistake. Leavy calculated, and demanded, only the interest owed on the $296,726.74 paid to the Health and Welfare Trust. No mention was made of interest on the $146,718.29 paid to the Pension Trust.[1]
 
 
 5
 ABM counter-offered around $85,000; Leavy replied that she was not authorized to accept less than $114,198.55, which represented simple rather than compound interest. Leavy threatened litigation if this last demand was not accepted at once; the demand, of course, was still based on interest for only the one Trust, not both. ABM agreed to Leavy's terms.
 
 
 6
 By letter of December 27, 1984, Leavy confirmed her understanding that the $114,198.55 check constituted full settlement of the Trusts' claims for interest. A release clause on the back of the check set this forth as well. After the check was negotiated, Leavy realized her mistake and attempted to persuade ABM to tender the additional interest owed to the Pension Trust. ABM refused. Litigation followed.
 
 
 7
 The district court granted ABM's motion for summary judgment. It found that the parties reached a valid accord and satisfaction of a bona fide dispute as to the amount of interest owed. It held that rescission would be inappropriate because ABM neither knew nor should have known of Leavy's mistake, and that rescission for unilateral mistake was unavailable where the contract was for a release of legal claims.
 
 
 8
 Federal substantive law applies to issues involving rights and obligations under ERISA. Amato v. Bernard, 618 F.2d 559, 567 (9th Cir.1980). A federal court "may use forum contract law to flesh out federal principles" to effect federal labor policy. Kemmis v. McGoldrick, 706 F.2d 993, 996 (9th Cir.1983). Both parties rely on California law for the relevant contract principles here, and we accept it as controlling on the issue here presented.
 
 
 9
 We do not disturb the district court's findings with respect to the accord. All seem to agree, and the record demonstrates, that the amount of interest owed by ABM to the Trusts was in dispute. Leavy's written statements that she could "accept no settlement ... less than this amount," and that ABM's check "constituted full settlement of the remaining disputes" were objective manifestations of the existence of a bona fide dispute resolved by mutual consent of competent parties, with each side supplying consideration. The requirements of a valid accord and satisfaction were met, see Moving Picture Mach. Operators Union Local No. 162 v. Glasgow Theatres, Inc., 6 Cal.App.3d 395, 402-03, 86 Cal.Rptr. 33, 38 (1970), notwithstanding that the subjective intention of one of the parties was at variance with the terms of the agreement. See Keppard v. Int'l Harvester Co., 581 F.2d 764 (9th Cir.1978).
 
 
 10
 An otherwise valid contract, nevertheless, may be rescinded for a unilateral mistake of fact by one party, if the other party knew or should have known about the mistake. See, e.g., Architects & Contractors Estimating Serv., Inc. v. Smith, 164 Cal.App.3d 1001, 1007-08, 211 Cal.Rptr. 45, 48 (1985); Restatement (Second) of Contracts Sec. 153. The letter from Leavy to ABM's counsel, in which the mistake was made, reveals on its face that the calculation was based on a principal amount of $296,726.74. Those familiar with the course of the dispute between ABM and the Trusts could see rather clearly that this was the exact amount paid to the Health and Welfare Trust, and that Leavy's demand therefore had omitted calculations based on the principal owed to the Pension Trust. Based on the record before us, we cannot foreclose a finding of fact that a reasonable person should have known about the mistake, given the clue contained in attorney Leavy's letter.
 
 
 11
 At trial it may develop that ABM has support for its position that a reasonable person could not be expected to discover this mistake. Parties often settle legal claims for a fraction of their potential to avoid the expense and uncertainty of litigation, and the law encourages them to do so. And there is no requirement to pick over the minute details and calculations contained in settlement correspondence to be sure it does not contain a mistake by the other side. Nevertheless, the law provides for rescission when a party knows of his adversary's mistake, and then conceals it to his own advantage. Stare v. Tate, 21 Cal.App.3d 432, 439-40, 98 Cal.Rptr. 264, 268-69 (1971) (Kaus, J.). Even in the less compelling case in which the party ought to be aware of the adversary's mistake, the law permits rescission. See Architects & Contractors Estimating Serv., 164 Cal.App.3d at 1007-08, 211 Cal.Rptr. at 48. Because a reasonable trier of fact could find that ABM should have known about the mistake from the appearance of the $296,726.74 figure, we REVERSE and REMAND for further proceedings.
 
 
 
 [1]
 We set out the relevant portions of attorney Leavy's letter:
 This letter responds to the inquiries contained in your letter dated November 9, 1984.
 
 
 [1]
 At this point, this office speaks for the Trusts. Initially, Mr. Ellis Cheney, as Trust Administrator, requested payment on the amounts found to be owing, together with interest at seven percent per annum. Thereafter, Irving Schoenfeld, as Counsel for the Trusts, made the same request. The matter has now been turned over to this law firm, and the same demand is made at this time. There is no conflict in the demands
 
 
 [2]
 As indicated above, demand is for interest at seven percent per annum, compounded annually. The reason that no dollar demand has been specified is that the amount depends upon when payment is rendered
 As you know, the principal amounts of the deficiencies for 1978 through 1980 were as follows:
 1978 - $159,248.01
1979 - 126,005.03
1980 - 11,473.70
 -----------
TOTAL $296,726.74
 When the interest is compounded annually for the 1978 deficiency, the total interest owing, at seven percent, as of December 1, 1984, for the 1978 deficiency is $78,437.39.
 At the same rate, interest on the 1979 deficiency, as of December 1, 1984, is $49,760.04. Interest on the 1980 deficiency, as of December 1, 1984, is $14,957.69. Thus, the total interest outstanding, as of December 1, 1984, for 1978, 1979, and 1980 deficiencies combined is $143,155.12.