**TRUSTEES OF THE CONSTRUCTION INDUSTRY AND LABORERS HEALTH AND WELFARE TRUST, et. al, Plaintiff,**

v.

**SUMMIT LANDSCAPE COMPANIES, INC., et. al, Defendants.**

**Summit Landscape Companies, Inc., et. al, Third Party Plaintiffs,**

v.

**Laborers International Union of North America LOCAL 872, et. al, Third Party Defendants.**

**No. CVS020877RLH(PAL).**

United States District Court, D. Nevada.

Feb. 12, 2004.

Michael A. Kristof, Schreck Brignone, Las Vegas, Southern Nevada Laborers Local 872 Training, Trustees/Construction Ind & Laborers Health & Welf, Trustees/Construction Ind & Laborers Vacation Trust, Trustees/Construction Ind. & Laborers Joint Pensio, for Plaintiffs.

Kurt C. Faux, Faux & Associates, Gregory E. Smith, Smith & Kotchka, Las Vegas, Jonathan E. Van Cleave, Irvine, CA, American Motorists Insurance Company, for Defendant.

**ORDER** (Motion for Summary Judgment-# 63 Motion for Extension of Time to Oppose-# 76)

HUNT, District Judge.

Before the Court is Plaintiffs' **Motion for Summary Judgment** (# 63), filed September 26, 2003, and Defendant American Motorists **Opposition and Request For an Extension of Time to Oppose** (# 76), filed December 12, 2003.[1] The Court has

1. The caption of Defendant American Motor- ists' Opposition reads "Defendant American

also considered the South Shores and Summit Landscape Opposition (# 78), filed December 15, 2003 and joined by Defendants American Motorist, Lake Mead Constructors, and Redland Insurance Company (# 79) on the same day; Plaintiffs' Reply to Defendants' Opposition (# 81), filed December 29, 2003; and Plaintiffs' Reply and Opposition to Defendant American Motorist' request for Extension of Time (# 84), filed December 29, 2003. No party has requested a hearing on the motions before the Court.

## BACKGROUND

South Shore Residential and Commercial Development Corporation dba Summit Landscape Services (hereafter Summit) entered into a subcontract agreement with Lake Mead Constructors (hereafter Lake Mead) on March 15, 1999 to perform landscape work on Southern Nevada Water Authority's River Mountain Project. As part of that agreement, Summit executed a Letter of Assent wherein Summit agreed to comply with the terms of the Southern Nevada Water Authority SNWA Improvements Project Labor Agreement, which covers work performed on the River Mountains Project. The Project Labor Agreement incorporates by reference the terms of the Labor Union Master Labor Agreements (hereafter LUMLA). The LUMLA requires contractors and subcontractors to make contributions on behalf of their employees to the Joint Trust Funds.

Summit admits that, from September 1, 2001—April 1, 2002, it did not pay benefits on the behalf of non-union employees. Summit asserts that its agent met with

Doug Neal, the representative of the relevant union, prior to September 1, 2001 because Summit had questions regarding the Project Labor Agreement. At this meeting, Summit asserts that it asked Mr. Neal if it was required under the Project Labor Agreement to make payments into the Joint Trust Funds on the behalf of non-union employees. Summit asserts that Mr. Neal informed Summit's agent that Summit was not required to make such payments, and that Summit could instead make benefits payments directly to the non-union employees.

Summit asserts that it proceeded accordingly until approximately April 1, 2002, at which time Thomas White, the managing authority to the Joint Trust Fund and Union, informed Summit that it was required to pay into the Joint Trust Funds on the behalf of all of Summit's employees, regardless of union membership. Summit asserts that while Mr. White originally required Summit to make the delinquent back payments to the Joint Trust Funds, Summit informed Mr. White that it had been making benefits payments directly to the non-union employees. Summit alleges that Mr. White was ultimately satisfied with such past payment in lieu of actual payment to the Joint Trust Funds, and considered Summit's previous payment directly to non-union employees as cure of the breach. Plaintiffs Joint Trust Funds disputes that Summit ever paid benefits directly to its non-union employees and denies that it ever reached an accord and satisfaction with Summit. Accordingly, on June 27, 2002, Joint Trust

---

Motorists Insurance Company's Opposition to Plaintiffs' Motion for Summary Judgment and Countermotion to Dismiss Plaintiffs' Claim for Lack of Subject Matter Jurisdiction." However, Defendant American Motorist does not utilize any of its argument to address any deficiency in subject matter jurisdiction; rather, American Motorists requests that this

Court grant it an extension of time within which to conduct discovery. Accordingly, the Court assumes that this is the thrust and intent of Defendant American Motorists' request, disregards the motion to dismiss language in the caption, and addresses those issues actually presented within the Opposition motion.

Funds brought suit under 29 U.S.C. §§ 1132(a)(3), 1132(e), and 1145, sections of the Employee Retirement Income Act of 1974 (hereafter ERISA), for breach of the Project Labor Agreement and associated damages.

**Procedural history.** Plaintiffs filed the instant Motion for Summary Judgment on September 26, 2003.[2] On October 14, 2003, Defendants filed both a motion for extension of time within which to respond to Plaintiffs' motion (# 67) and a motion requesting withdrawal of Jonathan Van Cleave and Gregory Smith as counsel for Defendants (# 68). According to Defendants' representations, Defendant Summit apparently decided to seek indemnification from other Defendants. Subsequently, attorneys Van Cleave and Smith asserted that associated conflicts of interest required that they withdraw as defense counsel from the litigation. Plaintiffs opposed the requested extension of time relating to obtaining new counsel. On November 7, 2003, this Court received and executed a stipulation to substitute Joseph Rodarti for Van Cleave and Smith as counsel for the South Shores and Summit Landscape Defendants (# 73), leaving Van Cleave and Smith as the counsel of record for the remaining Defendants, Redland Insurance Company (hereafter Redland), American Motorists Insurance Company (hereafter American Motorists), and Lake Mead. On December 3, 2003, Magistrate Judge Peggy Leen granted Defendants' motion requesting an extension of time (# 67); however, with reference to this Court's execution of the November 7, 2003(# 73) stipulation agreement, Judge

Leen dismissed Defendants' request to withdraw (# 68) as moot.

Following Judge Leen's order, American Motorists Insurance Company apparently procured new counsel in Mr. Faux; however, as of the date of this Court's order, there is no indication in the record that Faux or Van Cleave and Smith have requested and obtained judicial approval for the apparently-desired substitution. Nonetheless, American Motorist (per the services of attorney Kurt Faux) filed an Opposition on December 12, 2003. On December 15, 2003, Summit filed its Opposition to Plaintiffs' motion. Also on December 15, Van Cleave and Smith, noting that they were still counsel of record for Redland, American Motorists, and Lake Mead, filed a motion joining Summit's Opposition. Thus, before the Court are two sets of Opposition filed on behalf of American Motorists.

In an effort to prevent prejudice to Defendant American Motorists and believing that Plaintiffs will not be thereby prejudiced, the Court has considered all filed Oppositions in reaching its Order. However, the Court notes that attorneys Van Cleave and Smith are the counsel of record for Defendants American Motorists, Redland, and Lake Mead. If any of these Defendants wish to have substitute counsel and desire that counsel's arguments and filings to be countenanced by this Court in further proceedings on this matter, these Defendants must formally request this Court's permission to substitute counsel within three weeks of the filing date of this Order. The Court advises the parties that It will not grant any type of extension of

---

2. In its Opposition, Summit disputes that the Summary Judgment motion was directed against Summit Landscape Companies, Inc., apparently because Plaintiffs failed to mention this company by its full name in the opening paragraph of the motion, referring instead to "Summit Landscape." However, the caption of Plaintiffs' Motion for Summary Judgment clearly indicates Summit Landscape Companies, Inc. Accordingly, the Court disregards Summit's assertions, and addresses its order on Plaintiffs' motion to ALL Defendants, including Summit Landscape Companies, Inc.

time in conjunction with such substitution, given that such substitution, if desired, should have been formalized long before this moment.

## DISCUSSION

Plaintiffs assert that they are entitled to Summary Judgment because there is no dispute as to relevant questions of material fact in this matter. After reviewing the record, the Court finds that Defendants have admitted such facts as indicate that they are bound to contribute to the Joint Trust Funds on behalf of all employees, belonging to a union or otherwise. Further, after reviewing the relevant statutes and case law, the Court holds that the contractual agreement between Plaintiffs and Defendants was unambiguous, and Defendants' reading of the law is incorrect insofar as Defendants assert that an accord and satisfaction may be reached by an oral agreement in an ERISA-controlled case. Accordingly, the Court finds that Defendants have breached the contract, and Plaintiff is entitled to Summary Judgment and the awards contemplated under 29 U.S.C. § 1132(g)(2). Specifically, the Court awards Plaintiffs their requested unpaid contributions and interest on those unpaid contributions, reduces Plaintiffs' requested liquidated damages award according to ERISA's requirements, and directs Plaintiffs to provide the Court with an affidavit indicating the number of hours spent on the case and by whom (i.e., partner, associate, paralegal, etc.) to aid the Court in determining whether Plaintiffs' requested attorneys' fees and costs are reasonable. The Court declines to exercise its discretion under 29 U.S.C. § 1132(g)(2)(E) to award further legal or equitable relief.

### I. Summary Judgment standard.

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is "material" only if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Ind. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact, and the court must view all facts and draw all inferences in the light most favorable to the nonmoving party. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir.1982), *cert. denied*, 460 U.S. 1085, 103 S.Ct. 1777, 76 L.Ed.2d 349 (1983). Once the moving party satisfies the requirements of Rule 56, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505; *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-moving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosp., Inc.*, 929 F.2d 1404 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### II. Summit's Opposition (joined by American Motorists, Redland, and Lake Mead, as filed by Van Cleave and Smith)

**A. Receipt of the Project labor Agreement.** In their Opposition, Defen-

dants assert that Summit has never received a copy of the Project Labor Agreement that, Plaintiffs assert, requires Summit to pay into the Joint Trust Funds on behalf of all of Summit's employees. Accordingly, Defendants appear to argue (however inartfully) that whether the Project Labor agreement imposes duties upon Summit depends upon a jury's factual determination that Summit, in fact, received the Project Labor Agreement.[3]

The Court finds such an argument to be wholly without merit on at least two grounds. First, Doug Koch, Defendant Summit's authorized representative in the contract negotiations, signed a Letter of Assent on November 25, 2000, wherein he acknowledged on Summit's behalf that he had received a copy of the Project Labor Agreement ("...and in further consideration of the mutual promises made in the Project Labor Agreement, a copy of which was received and is acknowledged, ..."). Second, the Defendants assert in their opposition that Sean Fowler of Summit sought and obtained a meeting with the Union representative prior to the commencement of the project in order to discuss Summit's obligations under the contract because "the agreement was unclear" (referring to the Project Labor Agreement). The Court reads these two undisputed facts as clear admission on the part of Summit that it did, in fact, receive a copy of the Project Labor Agreement at the time it executed the Letter of Assent, and disregards any assertion by Summit to the contrary. Accordingly, the Court does not address Plaintiffs' proffered argument regarding whether such notice was necessary to impose the obligations contemplated in the Project Labor Agreement upon Summit.

**B. Ambiguity and the Consideration of Extrinsic Evidence.** Defendants assert that the Project Labor Agreement is unclear regarding whether Summit is required to make contributions into the Joint Trust Funds for non-union employees who would presumably not become beneficiaries of the Joint Trust Funds. Accordingly, Defendants have proffered extrinsic evidence of their understanding of the contractual obligations before the Court.

"Extrinsic evidence is inadmissible to contradict a clear contract term, but if a term is ambiguous, its interpretation depends on the parties' intent at the time of the contract's execution, in light of earlier negotiations, later conduct, related agreements, and industrywide custom." *Pierce County Hotel Employees and Restaurant Employees Health Trust et al. v. Elks Lodge*, 827 F.2d 1324, 1327 (9th Cir. 1987) (citations omitted). The determination of whether a contract is ambiguous is a question of law. *Knott v. McDonald's Corp.*, 147 F.3d 1065 (9th Cir.1998) (citing *National Tea Co. v. American Nat'l Bank and Trust Co. of Chicago*, 100 Ill.App.3d 1046, 427 N.E.2d 806, 808, 56 Ill.Dec. 474 (1981)). While federal substantive law controls in the determination of rights and

---

3. Defendants state "Specifically, there is a question of fact as to the terms and conditions incorporated into the Subcontract agreement between the Project general contractor ... and Summit, which raises the question on [sic] whether Summit was responsible for making contributions to the Joint Trust Funds as Alleged [sic] by Plaintiff." Defendant's Opposition at 2, lines 8–11 et seq. The Court takes this assertion—in tandem with Defen-

dants' subsequent assertion that Summit was never provided with the Project Labor Agreement (Opposition, at 2–3)—to not only dispute the meaning of Article X, § 3 of the Project Labor Agreement, but to also dispute whether the Project Labor Agreement itself was ever incorporated into the contractual agreements between Defendants, Plaintiffs, and the general contractor.

obligations under ERISA, *Amato v. Bernard*, 618 F.2d 559, 567 (9th Cir.1980), a federal court "may use forum contract law to flesh out federal principles" in effecting federal labor policy. *Building Service Employees Pension Trust v. American Building Maintenance Co.*, 828 F.2d 576, 577 (9th Cir.1987) (quoting *Kemmis v. McGoldrick*, 706 F.2d 993, 996 (9th Cir. 1983)). In turning to Nevada Law, this Court has been unable to locate any Nevada decisions providing guidance as to what factors, if any, a court should consider in determining whether a specific contractual term is ambiguous. Accordingly, the Court uses its own judgment in determining this legal question.

■ Defendants assert that Article X, § 3 of the Project Labor Agreement does not require Summit to make payments on behalf of non-union employees. Section 3 provides, in relevant detail,

> The Contractor will pay contributions to the established employee benefits funds in the amounts designated in the appropriate Schedule A and to make all employee-authorized deductions in the amounts designated in the appropriate Schedule A; provided, however, that the Contractor and the Union agree that *only such bona fide employee benefits as accrue to the direct benefit of the employees* (such as pension and annuity, health and welfare, vacation, apprentice-ship, training funds, etc.) shall be included in this requirement and required to be paid by the Contractor on this Project.

(Emphasis added). Defendant Summit reads Section 3 to indicate that if non-union employees are not entitled to the benefits of the Joint Trust Fund, Defendant Summit is not required to pay on their behalf.[4] However, the Court reads this language and its context to refer only to what general types of benefits Summit is required to pay as a contractor under the Project Labor Agreement, and to address not at all the issue of which employees are covered under the provisions of the Agreement. Further, the Court agrees with Plaintiffs' argument that to hold otherwise would read the Project Labor Agreement to premise a condition or benefit of employment upon union membership, in contravention of federal and state law. Accordingly, the Court finds that the Project Labor Agreement unambiguously commits Summit to pay benefits (in the amounts established elsewhere in the agreement) on behalf of *all* of Summit's employees, not just those employees associated with the Union, and rejects Summit's attempt to introduce extrinsic evidence to the contrary.

### C. Oral Modification of the Project Labor Agreement. Having determined

---

4. Defendant Summit arrived at the conclusion that its non-union employees would not benefit from the Joint Trust Fund because of an alleged meeting between Sean Fowler of Summit and Doug Neal of the Union. During this meeting, Summit alleges that:

> Summit specifically questioned whether it was required to make contributions to the Joint Trust Funds for non-union employees because the agreement was unclear, as the non-union employees would never become direct beneficiaries of the Joint Trust Funds as non-union members. Summit was informed at this meeting that they were correct in that its non-Union employees would

not be able to receive any benefit from the Joint Trust Funds. Summit asked if their laborers could join the Union to take advantage of the benefits and was told that the Union was not hiring laborers at that time. Summit was also informed that it was not required to make payments to the Project Labor Agreement, but instead, because Summit's non-Union employees would never receive the benefit of any contributions to the Joint Trust Funds, that Summit could pay the employees their benefits directly.

Defendant Summit's Opposition at 3 (references omitted).

that the Project Labor Agreement unambiguously requires Summit to pay benefits on behalf of all of Summit's employees, the Court turns now to Defendants' assertion that discussions between its representatives and those of the Union and Joint Trust Funds modified the terms of the contract.[5]

The Ninth Circuit addressed the issue of whether bargaining agreements may be orally modified in *Maxwell v. Lucky Construction Co., Inc.,* 710 F.2d 1395 (9th Cir.1983) and *Waggoner v. Dallaire,* 649 F.2d 1362 (9th Cir.1981). In *Maxwell,* an employer entered into labor agreements with an Operator Engineer's union and a Laborer's union, both of which required the employer to make contributions to the unions' respective trust funds on behalf of employees performing work under the agreements. A union-member employee performing work covered solely by the Operating Engineer's agreement requested that contributions on his behalf be paid to the Laborer's trust in lieu of the Operating Engineers' Trusts because the employee had long been a member of the Laborer's union and had greater pension benefits vested in that union's trusts. The employer received oral permission from the Operating Engineers' union representative, and began making payments to the Laborer's union trust on behalf of the employee. The trustees of the Operating Engineer's trusts brought suit, claiming that the employer's change in contribution payments constituted breach of the collective bargaining agreement.

After reviewing 29 U.S.C. § 186(c)(5) and the Ninth Circuit's previous decision in *Waggoner v. Dallaire,* 649 F.2d 1362 (9th Cir.1981), the *Maxwell* court held that oral modification of labor agreements was prohibited under the law. The Maxwell court was unmoved by the employer's argument that the oral agreement was fair, was made at the employee's request, and was done openly:

> The knowledge and participation of the affected employee are not adequate substitutes for the protection afforded by the writing requirement. Neither an individual employee nor an authorized bargaining representative may, therefore, waive the protections of § 302(c)(5) by accepting oral modification of the employer's written obligations to the trusts.... Nor does fairness rescue an otherwise invalid oral modification of an employer's trust contribution obligation. Were we to initiate a system of case by case judicial review of oral modifications, we would render the protective writing requirement less effective by exposing both union and employer to corrupt bargain temptation. Judicial evaluation of the nature and circumstances of contested oral modifications would not constitute a deterrent equal to the congressionally mandated writing requirement.

*Id.* at 1398 (citations omitted). Accordingly, the Circuit upheld the District Court's conclusion that the alleged oral modification was of no effect.

After reviewing the foregoing, the Court finds that the *Maxwell* decision requires the Court to disregard any alleged oral modifications of the bargaining agreements at issue in this case. Plaintiffs have included additional decisions from other Circuit and District courts for the proposition that trust agreements also require a written agreement to be modified. However, the Court finds that Defendants claim oral modification of the Project Labor Agreement itself, and not the terms of the trust agreement, and declines to address this additional authority.

---

5. *See supra* note 3 for a description of the alleged meeting between Mr. Fowler of Summit and Mr. Neal of the union and attempted oral modification.

■ **D. Accord and Satisfaction.** Without responding to those cases proffered by Plaintiffs that indicate a labor contract may not be orally modified, Defendants argue that the parties reached an oral accord and satisfaction respecting the non-payment of benefits on behalf of non-union employees.[6] Accordingly, argue Defendants, summary judgment is improper because the question of whether the parties did in fact reach accord and satisfaction on the issue is a question of fact. Underpinning Defendants' argument is the supposition that two parties may arrive at accord and satisfaction for past breach of a labor contract via an oral agreement. The Court finds this assumption to be incorrect.

Defendants cite to three cases, two of which involve contracts governed by ERISA. *Building Service Employees Pension Trust v. American Building Maintenance Co.,* 828 F.2d 576 (9th Cir. 1987); *Int'l Union of Operating Engineers v. Richard Karr dba Alaska Unlimited Co.,* 1991 WL 530757 (W.D. Wash.).[7] Both *Building Service* and *International Union* involve accord and satisfaction scenarios where (A) the breaching party paid some amount of the monies owed to the trust in mitigation of that party's breach, and (B) those attempted accords were expressed in written documents.

Neither of these holdings controvert those cases cited by Plaintiffs that require any modification of a labor agreement be in writing. While Defendants are correct in asserting that accord and satisfaction for a contractual dispute or breach may be had in ERISA-controlled scenarios, that accord must be effectuated in writing under the relevant case law, as previously outlined. Defendants have not asserted that such a writing exists or formed the basis of the attempted accord and satisfaction. Rather, Defendants argue that the attempted accord and satisfaction were the result of verbal discussions between the parties, though Defendants assert (without more) that Mr. White agreed to draft a memorialization of the attempted oral accord. Under such a scenario and without a written accord, the Court will not recognize a valid discharge of any past contractual failings on the part of Defendants.

The Court also notes that Defendants' have neglected by their own account of the facts to make any restitution to the Joint Trust Funds of outstanding contributions as part of their attempted accord and satisfaction. Given that the Court finds the

---

6. Defendants assert that six months into the Project, Summit contacted Thomas White, the alleged managing authority to the Joint Trust Funds, who informed Summit that the Joint Trust Funds required Summit to pay benefits relating to non-union employees. Defendants assert that while Mr. White initially requested that Summit make back payments of these benefit contributions, Summit informed him of its alleged conversation with the representative of the Union wherein the Union told Summit that payment of benefits directly to the non-union employees was sufficient. Summit alleges that Mr. White then acknowledged that, because Summit had relied upon the Union rep's statement and had actually paid these benefits to non-union employees, Summit was not required to make back payments for the previous six months.

7. Defendants also cites to *Milgard Tempering, Inc. v. Selas Corp. of America,* 902 F.2d 703 (9th Cir.1990) for the proposition that the determination of whether accord and satisfaction exist is a mixed question of fact and law and for an illustration of how that court applied Washington law regarding accord and satisfaction. However, the case in inapposite to Defendant's needs, both because ERISA did not apply to the outcome in *Milgard* (as the conflict arose out of an ordinary commercial dispute governed by common law contract principles) and because the accord and satisfaction at issue in *Milgard* arose out of a written settlement agreement. As discussed previously, any contractual modification of an ERISA-governed agreement must be in writing.

attempted accord and satisfaction were oral and, hence, invalid per ERISA, the Court will not address Defendants' further failing in relying upon past consideration (given to a third party, at that) as the basis of a contractual "satisfaction" of outstanding contractual obligations.

■ **E. Liability under 29 U.S.C. § 1132(g)(2).** In their motion for summary judgment, Plaintiffs have requested damages arising under the Project Labor Agreement and 29 U.S.C. § 1132(g). Section 1132(g) provides that,

> In any action ... by a fiduciary for or on behalf of a plan to enforce [an agreement to pay into an employee trust fund] in which a judgment in favor of the plan is awarded, the court shall award the plan—(A) the unpaid contributions, (B) interest on the unpaid contributions [as calculated in the trust agreement itself], (C) an amount equal to the greater of [interest on the unpaid contributions or, if provided for under the plan, liquidated damages capped at 20% of unpaid contributions], (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and (E) such other legal or equitable relief as the court deems appropriate.

Accordingly, Plaintiffs request the payment of past unpaid contributions ($289,682.93), interest on those contributions compounded at the 14% rate provided in the trust agreements ($53,860.11), liquidated damages in the amount of 20% of the unpaid contributions ($57,936.59), and attorneys' fees and costs ($51,907.04). After crediting a previous payment by Summit of $18,875.45, Plaintiffs' final total amounts to $439,161.22.

In its Opposition, Summit does not contest the calculations, methodology, or the requirement to pay damages proffered by Plaintiffs, other than to argue that Summary Judgment is premature in this matter. After reviewing Plaintiffs' calculations, methodology, and requested damages, the Court finds that Plaintiffs' unpaid contributions, interest, and attorney's fees damages should be awarded. The Court finds that Plaintiffs have misread the statute respecting liquidated damages, and reduces that award to the value of interest accrued on the unpaid contributions, or $53,860.11.

**1. Unpaid contributions.** Having found Summit in breach of the labor agreement for unpaid contributions, it follows, *a fortiari,* that Summit is liable, at a minimum, for such past unpaid contributions. 29 U.S.C. § 1132(g)(2)(A) requires such a result. The calculations presented by Plaintiffs are based upon Summit's own records, and have not been contested by any of the Defendants in this litigation. After reviewing those calculations, the Court finds them to be correct. Accordingly, the Court awards Plaintiffs unpaid contributions in the amount of $289,682.93.

**2. Interest.** Under 29 U.S.C. § 1132(g)(2)(B), a prevailing fiduciary in a litigation involving unpaid labor trust contributions is entitled to interest on the unpaid contributions as "determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26." The trust agreements creating the Joint Trust Funds provide that interest on unpaid contributions accrues at an annual interest rate of 14%. No Defendants have challenged the validity of that interest rate, nor Plaintiffs' calculation of interest owed after applying that rate. Accordingly, the Court finds Plaintiffs are entitled to interest accruing at a rate of 14%, that Plaintiffs' calculation of that accrual is accurate, and that Plaintiffs are entitled to $53,860.11 under § 1132(g)(2)(C).

**3. Liquidated damages.** 29 U.S.C. § 1132(g)(2)(C) provides that a prevailing fiduciary in a litigation involving unpaid labor trust contributions is entitled to

an amount equal to the greater of—(i) interest on the unpaid contributions, or (ii) liquidated damages *provided for under the plan* in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount [of unpaid contributions].

(Emphasis added). Plaintiffs have apparently requested 20% of the unpaid contributions ($57,936.59), but have not pointed the Court to any provision within the trust documents that provides for an award of liquidated damages in the event of breach. However, after reviewing the trust documents, the Court finds that the parties contemplated a liquidated damage amount of 10% of the unpaid contributions, or $28,968.29, and not the requested 20%. See Plaintiffs' Motion for Summary Judgment, Exhibit 2(H) at LAB00110. Accordingly, the Court reads § 1132(g)(2)(C) to award again the amount of interest on the unpaid contributions, or $53,860.11, as the correct measure of statutory damages.

■ **4. Attorney's fees and costs.** 29 U.S.C. § 1132(g)(2)(C) provides that a prevailing fiduciary in a litigation involving unpaid labor trust contributions is entitled to "reasonable attorney's fees and costs as the court deems appropriate." While the question of *whether* to grant attorney's fees requested under § 1132(g)(1) requires the district court to review several factors, *see Hummell v. S.E. Rykoff & Co.*, 634 F.2d 446 (9th Cir.1980), § 1132(g)(2)(D) *requires* the Court to award of reasonable attorney's fees and costs where the fiduciary prevails in litigation. Since Plaintiffs are trustees of labor trusts and this Court has already found that Plaintiffs are entitled to unpaid contributions, the question before the Court is restricted to whether Plaintiffs' requested attorney's fees and costs are reasonable.

■ In determining whether requested attorney's fees are "reasonable," the Ninth Circuit requires a district court to consider twelve guideline factors:

(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee; (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr v. Screen Extras Guild*, 526 F.2d 67, 70 (9th Cir.1975); *see also Ferland v. Conrad Credit Corp.*, 244 F.3d 1145 (9th Cir. 2001); *McGrath v. County of Nevada*, 67 F.3d 248, 252 (9th Cir.1995); *General Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1380–81 (9th Cir.1986). Although the *Kerr* court termed these factors as "guidelines," failure to consider these factors and to adequately explain that consideration constitutes abuse of discretion. *Kerr*, 526 F.2d at 70.

■ After reviewing these twelve factors, the Court finds that Plaintiffs have not provided this Court with sufficient information to determine whether the requested attorney's fees and costs are reasonable. In Exhibit 14 of Plaintiffs' Motion for Summary Judgment, Plaintiffs have proffered the affidavit of Michael Kristof, lead counsel for Plaintiffs. Therein, Mr. Kristof details information relating to billable rates, the complexity of the issues, and the reputation and skill of his law firm in handling ERISA cases, but fails to offer any information pertaining to the amount of time and labor undertaken by the attorneys in this

matter, a factor that this Court deems key in determining whether the requested attorney's fees are reasonable. Accordingly, the Court directs Plaintiffs to provide the Court with an affidavit including this information, as well as any additional information Plaintiffs deem germane to the Court's determination of reasonableness under the *Kerr* factors outlined above, within three weeks from the filing date of this Order.

## III. American Motorist' Opposition (filed by Faux)

**A. Extension request per Fed. R.Civ.P. 56(f).** In its first Opposition (filed by Mr. Faux), Defendant American Motorists argues that Summary Judgment is inappropriate per Federal Rules of Civil Procedure 56(f) because Defendant American Motorists has not had an opportunity to conduct adequate discovery.

The Court finds Defendant American Motorists' request to be without merit. Plaintiffs named American Motorists as a Defendant in its original complaint filed June 27, 2002. After two extensions, discovery in this matter closed on August 28, 2003. Defendant American Motorists cannot at this late stage in the litigation argue in good faith that it has not had an adequate period within which to conduct discovery. The fact that Defendant American Motorists has (apparently) decided to procure new counsel in this matter does not reset the litigation's time tables; if it did, litigation would quickly become unpredictable and wasteful, attributes that are anathema to the judiciary.

**B. Asserted Waiver of Trust Requirements.** In its Opposition, Defendant American Motorists asserts that, while parties may not be able to orally modify the terms of labor agreements, factual questions exist as to whether Plaintiffs waived the requirements of the bargaining agreement or whether Summit detrimen-

tally relied upon the representations of the union and the Joint Trust Funds. However, congressional action and the Ninth Circuit's decision in *Maxwell* invalidate this argument. The *Maxwell* court's decision illustrates that Congress and the courts have acted to remove labor agreements from the realm of traditional contract principles by requiring that *any* modification of the required contractual performance be in writing. The *Maxwell* decision unequivocally states that non-written attempts—even when agreed to by employee, employer, and union—to change the memorialized requirements of a labor agreement violate the law and are void. *Maxwell* requires that there can be no possibility that one of the parties may waive performance of the agreement in any manner other than in writing; otherwise, as stated by the *Maxwell* court and quoted in the excerpt above, the policies and protections that Congress has set in place for the benefit of the nation's employees would be of no effect, and would be circumvented.

Accordingly, this Court views the possibility of an oral waiver of the contractual terms by Joint Trust Funds or an oral modification of the contract with subsequent reliance by Summit to be irrelevant in discussing an ERISA-controlled agreement. Defendants have not provided this Court with nor averred existence of a written modification of the Project Labor Agreement, nor has American Motorists provided the Court with any legal authority to support its assertions regarding waiver and detrimental reliance in the ERISA context. Consequently, the Court finds that federal statute and case law require that Summit abide by the letter of the Project Labor Agreement. Having failed to do so, Summit is in breach of the agreement.

**C. American Motorists' liability.** Given that both Oppositions filed on behalf of American Motorists contest the extent

of American Motorists' liability, that liability is discussed separately in the following section.

## IV. Liability

**A. Summit Landscape Companies, Inc.; South Shore Residential and Commercial Development Corporation; South Shore Residential and Commercial Development Corporation dba Summit Landscape Services.** While Plaintiffs have not been more descriptive in the body of their Motion for Summary Judgment than to alleged that they are entitled to summary judgment against "Summit Landscape," the Court finds that the admitted and undisputed facts clearly indicate that all three companies are liable to the Plaintiffs for an award of summary judgment.

 South Shore Residential and Commercial Development Corporation dba Summit Landscape Services (referred to herein as Summit) entered into the subcontract agreement with Lake Mead Constructors, and otherwise represents in its Opposition that it interacted with Lake Mead in the course of Summit's contractual duties on the River Mountains Water Treatment Facility. However, the name on the surety bond that Summit executed with relation to that project under Lake Mead Constructors was Summit Landscape Companies, Inc. (hereafter Summit Landscape Companies). Consequently, both Summit and Lake Mead executed a change order following the execution of the original subcontract agreement, changing the name on the contract to Summit Landscape Companies, Inc. in conformity with the surety bond. See Plaintiffs' Motion for Summary Judgment, Exhibit 22. In its Opposition, Summit does not dispute Plaintiffs' version of these facts, but does dispute that Plaintiffs' Opposition is directed towards Summit Landscape Services. However, as detailed in footnote 1,

the Court finds that assertion to be meritless. In its Opposition, Summit has not distinguished between its actions as "South Shore Residential and Commercial Development Corporation dba Summit Landscape Services" and "South Shore Residential and Commercial Development Corporation" (hereafter South Shore), nor has it disclaimed any responsibility on the part of South Shore for the actions of either Summit or Summit Landscape Companies. Given this failure to controvert Plaintiffs' characterization of the facts, Summit's admitted contractual involvement with Lake Mead, and the existence of the bond for the River Mountains project in Summit Landscape Services' name, the Court finds that all three are jointly and severally liable for Summit's breach of the Project Labor Agreement.

 **B. Lake Mead Constructors.** It is undisputed that Lake Mead Constructors was Summit's general contractor under the River Mountains project. Nev. Rev.Stat. 608.150 governs Nevada's approach to a general contractor's liability for a subcontractor. Section 608.150(1) states, in relevant part,

> Every original contractor making or taking any contract in this state for the erection, construction, alteration, or repair of any building or structure, or other work, shall assume and is liable for the indebtedness for labor incurred by any subcontractor or any contractors acting under, by or for the original contractor in performing any labor, construction, or other work included in the original contract...

As has been noted by Chief Judge Philip Pro of this district, "[t]he Nevada Supreme Court has interpreted the phrase 'indebtedness for labor' in § 608.150(1) to include employer contributions provided for under collective bargaining agreements." *Trs. of the Constr. Indus. & Laborers Health & Welfare Tr.*, 156 F.Supp.2d 1170, 1172

(D.Nev.2001) (citing to *Tobler & Oliver Constr. Co. v. Bd. Of Trs.*, 84 Nev. 438, 442, 442 P.2d 904 (1968)). As was determined in *Trustees of the Construction Industry*, general contractors are liable under Nevada law for their subcontractor's failure to pay trust fund contributions. *See also Tobler*, 84 Nev. at 442, 442 P.2d 904. Accordingly, Lake Mead is liable to the same extent as Summit for Summit's failure to make the required contributions to Plaintiffs, as Lake Mead appears to recognize in its Opposition when discussing derivative liability.

### C. Redland and American Motorist.

▇▇▇ Redland and American Motorists have been sued in their capacity as surety for Summit in the performance of its River Mountain project contractual duties. Redland issued Summit a surety bond covering up to $50,000 of liability for a claim by a party that is "injured by any unlawful act or omission of the contractor in the performance of a contract." Both of the Opposition filed on behalf of American Motorists take issue with the extent of American Motorists' liability to Plaintiffs. American Motorists issued a surety bond covering "labor and materials in the prosecution of the work provided for in the [subcontract]" to Summit in the amount of $1,650,000.

### 1. Van Cleave and Smith Opposition.

In the Opposition filed by Van Cleave and Smith, American Motorists, Redland, and Lake Mead argue that any liability is derivative, and that it is inappropriate to award damages against American Motorists until the Court has heard further argument regarding the extent of liability by each of the Defendants and what rights the Defendants have against one another. The Court finds that this assertion is incorrect. The Court's decision to grant Summary Judgment in Plaintiffs' favor does not foreclose suit by one Defendant against another for contribution against any amount secured by Plaintiffs under this Order, and that is the appropriate forum for American Motorists, Redland, and Lake Mead to pursue any claims they may have against Summit, one another, or anyone else.

### 2. Faux Opposition.

In the Opposition filed by Faux, American Motorists argues that it is not liable for that part of a judgment against Summit involving interest on the unpaid contributions, liquidated damages, and attorneys' fees and costs; rather American Motorists argues that, at most, it is liable only for the unpaid contributions to the Joint Trust Funds. American Motorists urges this Court to adopt the approach expressed in *American Home Assurance Company v. Larkin General Hospital Ltd.*, 593 So.2d 195 (Fla. 1992).[8] *American* addressed the question

---

**8.** American Motorists has also cited to two other opinions which, it argues, counsel against liability. *See Sandy Valley Assocs. v. Sky Ranch Estate Owners Ass'n*, 117 Nev. 948, 35 P.3d 964, 969 (2001) (holding that "attorney's fees cannot be recovered as a cost of litigation unless authorized by agreement, statute or rule" in a contractual dispute unrelated to ERISA); *Ranger Constr. Co. v. Prince William County School Bd.*, 605 F.2d 1298, 1302 (4th Cir.1979) (under Virginia law, the Defendant contractor was not liable for attorney's fees and, hence, the surety was also not liable because its obligations: "The obligation of the Surety Travelers is accordingly to be measured by the promises and specific liabilities of its principal Ranger, and those obligations can be no broader or more extensive than those of its principal."). However, the Court views these two cases as inapposite. Per *Sandy Valley*, there is a controlling federal statute—29 U.S.C. § 1132(g)—which clearly *requires* this Court to award attorney's fees to a prevailing fiduciary in a labor trust dispute. Further, the *Ranger* court's opinion, far from supporting American Motorists' legal argument, appears to controvert that argument where, as here, the defendant contractor has been found liable for attorney's fees.

of whether a completion bond required the surety issuing the bond to pay for damages resulting from construction delays. The *American* court held that a bond is governed by common law contract principles, and Florida law limited the surety's liability to the terms of the bond. Since the bond at issue contemplated only a commitment to complete the construction project and did not provide for delay damages, the Florida Supreme Court rejected the trial court's award of delay damages against the surety.

American Motorists argues that a similar result obtains under Nevada law, citing to *All Star Bonding v. State*, 62 P.3d 1124 (Nev.2003). In *All Star*, the Nevada Supreme Court upheld an express provision in a bail bond limiting the effectiveness of the bond to a one-year period, where the State of Nevada wanted the bond to continue in force beyond that period. In reversing the district court's decision in favor of the State, the *All Star* court held that, "because bondsmen make calculated risks when entering into surety agreements, they cannot be held to any greater undertaking than they have agreed to. The terms of the bond should be 'construed strictly in favor of the surety.'" *Id.* at 1126 (citations omitted).

The Court finds American Motorists' arguments are without merit; that American Motorists' bond covers not only outstanding contributions but also interest on those contributions, liquidated damages, and attorney's fees and costs; and that the case law cited by American Motorists does not require a contrary result. American Motorists issued a bond that provided Summit with surety for "labor and materials in the prosecution of the work provided for in the [subcontract]." As was noted above, the Nevada Supreme Court has held that "indebtedness for labor," addressed in Nev. Rev.Stat. § 608.150(1), includes employer contributions provided for under collective bargaining agreements. *See Trs. of the Constr. Indus. & Laborers Health & Welfare Tr.*, 156 F.Supp.2d 1170, 1172 (D.Nev. 2001) (citing to *Tobler & Oliver Constr. Co. v. Bd. Of Trs.*, 84 Nev. 438, 442, 442 P.2d 904 (1968)). Given that Summit purchased surety from American Motorists against liability arising out of indebtedness for labor, the *American* decision is inapposite. Further, since the *Tobler* decision in 1968, Nevada statutory and case law have provided that "indebtedness for labor" includes employer contributions required under collective bargaining agreements. American Motorists should have taken that law into account when it calculated the risk of providing Summit with surety in Nevada. Requiring American Motorists to pay against its liability neither holds American Motorists to an undertaking to which it did not agree nor construes the coverage of American Motorists' bond in any manner other than strictly, per the *All Star* court's requirements.

Accordingly, the Court finds both the Van Cleave and Smith Opposition and that filed by Faux to be without merit. This Court has determined that Summit is liable to Plaintiffs for failure to pay required contributions under a collective bargaining agreement, per 29 U.S.C. § 1132(g)(2). Further, the Court notes that the established law in Nevada considers failure to pay such required contributions an "indebtedness for labor." American Motorists issued a bond providing surety for Summit against claims for "labor and materials" in the course of Summit's contractual obligation. Accordingly, the Court finds that American Motorists and Lake Mead are liable for the judgment against Summit, and Redland is liable for up to $50,000 of that judgment. The Court notes that its ruling does not preclude American Motorists, Redland, and/or Lake Mead from bringing suit for contribution from one another or Summit.

## CONCLUSION

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that Plaintiff's requested summary judgment (# 63) is GRANTED.

IT IS FURTHER ORDERED that Summit is liable to Plaintiffs for the following:

(1) Unpaid contributions in the amount of $289,682.93.

(2) Interest on unpaid contributions in the amount of $53,860.11

(3) Liquidated damages under 29 U.S.C. § 1132(g)(2)(C) in the amount of $53,860.11

(4) Reasonable attorney's fees, in an amount to be determined by the Court.

IT IS FURTHER ORDERED that Lake Mead Constructors is liable to the same extent as is Summit.

IT IS FURTHER ORDERED that American Motorists is liable to the same extent as is Summit.

IT IS FURTHER ORDERED that Redland is liable to the same extent as is Summit, for an amount equal to its bond coverage ($50,000).

IT IS FURTHER ORDERED that Plaintiffs provide this Court with an affidavit indicating the number of hours worked on this case and by whom, within three weeks of the filing date of this Order.

IT IS FURTHER ORDERED that Defendant American Motorists Insurance Company request permission of this Court for substitution of Mr. Faux for Mr. Van Cleave and Mr. Smith as counsel of record within three weeks of the filing date of this Order if Defendant American Motorists desires such a substitution.